BRANNAN *et al. v.* HARRISON, Comptroller-general.

No. 7968.   APRIL 24, 1931.

*C. N. Davie, J. F. Kemp,* and *Paul L. Lindsay,* for plaintiffs.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general, Robert B. Troulman, Robert S. Sams,* and *J. P. Wilhoit,* for defendant.

RUSSELL, C. J. (After stating the foregoing facts.) The only question in this case is whether the license tax demanded by the defendant as a consequence of the provisions of the tax act of 1927 referred to in the statement of facts, is such a classification of the insurance agents referred to as to be unreasonable, arbitrary, and oppressive, as applied to the plaintiffs in error. As said in *Hunter* v. *Wright,* 169 *Ga.* 840, 846 (152 S. E. 61) : "The General Assembly in the imposition of occupation taxes has the right of classification. After the classification has been made, the tax upon every member of any class which the taxing authority may make must be uniform. The legislature in the tax act of 1927 subdivided insurance agents into several classes. Inasmuch as the tax upon every member of each class upon which the tax imposed is the same, there is no violation of the constitution. The legislature had also the right, for good and sufficient reason, to create another class who should be exempted from certain operations of the law; and the fact that they are exempted does not destroy that uniformity which is required by the constitution, unless the creation of an exempted class results in making the provision with reference to the occupation tax so injurious upon the other classes as to make it arbitrary and oppressive." The plaintiffs in the case now before us are industrial, accident, and life insurance agents, while in the *Hunter* case the persons who were exempted from the payment of the occupation tax were engaged in writing accident insurance only. The question now presented is, whether the same legislative classification as was referred to in consideration of the *Hunter* case, as applied to a class including industrial, life and accident insurance, is, for the reasons stated in the petition, arbitrary and oppressive and so unreasonable as to deprive such worker of the property right to earn a living, without due process of law. The contention that a license has been granted which authorizes each of the plaintiffs to pursue the occupation of writing the specified forms of insurance in Georgia is used as an argument that the occupation tax of $10, which has been assessed and is required to be paid in each and every county in the

State, should be confined to one payment of $10. This contention is not sound. The grant of a license is one thing; the fixing of an occupation tax upon the business which the applicant for the license is permitted to perform is another thing. It is not unreasonable or arbitrary to provide that the burdens of taxation shall be borne in proportion to the benefit accruing to the licensees, or that these burdens may be proportioned to the amount of business done and probable profits accruing from the business which the State has authorized may be done in the occupation designated in the license. The nature of the occupation under consideration is such that it is hardly practicable or possible that in this business of soliciting and collecting for industrial, life, and accident insurance, the solicitor or collector can pursue this vocation in the same year in all the 161 counties in the State. And when we consider the amount of time required and of individual effort necessarily expended, it is plain that the business would scarcely be profitable if such agent or solicitor were not well acquainted with his patrons and in close touch with them. So it does not appear that the classification made by the General Assembly is either arbitrary, unreasonable, or oppressive. The evidence that the business done by some of the agents is very small, and that the returns in case of none of them are extremely large, proves nothing more than that perhaps the number of persons engaged in the business is excessive in comparison with the number of persons who desire the insurance referred to or who are financially able to pay the premiums. We can not say as a matter of law that the tax of $10 per county is excessive per se, because we can not shut our eyes to the fact that opportunities for remunerative employment as a solicitor or collector for such insurance in a county with a population of many thousands with fixed salaries and engaged in industrial pursuits must be far greater than in many of the small, thinly settled, strictly agricultural counties in this State. It is a matter of common knowledge that the earning capacity of different individuals, dependent upon their surroundings and their health, and indeed for reasons too numerous to mention, are variant and variable, and the criteria by which their actual earning capacity is fixed and determined are as distinct as the different types of humanity which the different individuals represent. Up to this point we have assumed that a solicitor or collector for industrial life and accident insurance, for the reasons stated,

would not generally follow his occupation in more than one county at the same time. However, if in particular cases a solicitor or collector should by virtue of his license determine to extend his operation into two or more adjoining counties, if not into counties which were not adjacent, the fact that the occupation tax of $10 is required is not an assault upon the reasonableness of the classification adopted by the legislature which can be sustained upon the ground that the classification is arbitrary or oppressive. Taking into consideration the nature of the business, and that the burden of all taxation should be equal, it seems reasonable that one who carries on business in two counties ought to pay $20 per annum, if one who carries on the same business pays $10 as an occupation tax, therefore enabling him to carry on business in only one county.

The fact that an adjuster pays only $50 as an occupation tax, and yet may adjust in any or all counties of the State, does not argue that an occupation tax of $10 upon a solicitor and collector of industrial insurance is an unjust discrimination which renders the levy of the occupation tax upon the latter a violation of the constitution of the State. In the exercise of its constitutional right of classification, there seem to be sound reasons supporting the distinction enacted by the General Assembly, aside from the fact, as appears in the record, that much of the adjustment of insurance referred to is made without any charge on the part of the adjuster. From the very nature of the two occupations—the one of soliciting and collecting premiums which are to be quite frequently collected, and the business of ascertaining the fact of liability and the amount thereof,—these two occupations do not belong in the same class. We are of the opinion the General Assembly has properly exercised its right of placing them in different classes. It does not appear that these two occupations are in competition with each other in any respect, and therefore an occupation tax imposed upon an adjuster can not be held to be discriminatory against a solicitor and collector. The court did not err in refusing to enjoin the collection of the occupation tax, or in dismissing the petition.

*Judgment affirmed. All the Justices concur, except Atkinson, J., who dissents.*

GILBERT, J., concurring specially. There is an additional reason why the court did not err in refusing the injunction; that is, the comptroller-general had made no demand upon the plaintiffs, none

of whom had been arrested, nor in any manner disturbed in person or property.