JOHN CONARD, JR., Defendant Below, *v.* THE STATE OF DELAWARE, Plaintiff Below.

*(October* 28, 1940.)

RODNEY and SPEAKMAN, J. J., sitting.

*James M. Tunnell, Jr.,* and *P. Warren Green* for the Defendant Below.

*James R. Morford,* Attorney-General, and *William J. Storey,* Deputy Attorney-General, for the State.

Superior Court for Kent County, July Term, 1939.

RODNEY, J., delivering the opinion of the Court:

Some preliminary and passing attention should be ac-

corded the question as to whether the pertinent statute is an exercise of the police power of the State, or whether its main purpose is the raising of revenue. While not of primary importance, the question has materiality as touching the question of classification of the subjects of the license and of discrimination, for under the police power, the legislative control is not concerned with the identical rules as in the imposition of taxes. In *Yourison v. State,* 3 *W. W. Harr.* (33 *Del.*) 577, 140 *A.* 691, the court construed a statute, substantially the same as the one now under consideration, and reached the conclusion that it was not a revenue measure. That court recognized that the statute there considered, like the present, contained no express words giving any authority to refuse a license; that court, unlike ourselves, felt that the authority to grant a license implied the power to formulate governing standards and to refuse to issue a license for a boat which the issuing authority considered unsafe, or which was owned by a person whom it considered unfitted to have charge of its operation.

It is frequently difficult to determine whether the imposition of a charge or fee by the government is an exercising of the police power or of the taxing power. If the imposition has for its primary object the discouragement of dangerous employments, the protection of the safety of the public, or of citizens, or the regulation of relative rights, privileges or duties as between individuals, then the legislation may fairly be regarded as an exercise of the police power for the public welfare. A fair test may be that when a fee is exacted and something is required or permitted in addition to the payment of the sum, either to be done by the licensee, or by some regulation or restriction imposed upon him, then the fee" is a license fee or license tax under the police power. When the payment of the fee allows the carrying on of the business without the

performance of any other condition, and the license is subject to no restriction or regulation, and no option exists to refuse the issuance of the license, then the payment of the license fee is a tax for revenue. In the cited act there is nothing to be done but the payment of the fee. No examination of the boat or operator is provided for, and no option or power appears vested in the issuing authority to refuse the license upon tender of the prescribed fee. It would seem to us that the act is an act to raise revenue, and not passed under the general police power of the State.

We must now consider the objections, as raised by the defendant below.

1. The defendant below insists that the exemption of oar-propelled boats makes the act unconstitutional under the 14th Amendment to the Federal Constitution in that he is denied equal protection of the laws, and that it is unconstitutional under *Section* 1 of *Article XIII* of the *State Constitution* in that the tax is not made uniform upon the same class of subjects.

In either case the constitutionality of the act is to be determined by the reasonableness of the classification attempted. The governing rules are largely the same, and generally a tax violating one of the provisions violates the other. 1 *Cooley Taxation,* § 249; § 331.

The question, therefore, is whether classifying separately boats propelled exclusively by oars, and exempting them from the operation of the act, is a reasonable exercise of the legislative power of classification.

It is generally agreed that a classification for the purpose of taxation, not purely arbitrary but based on reason, is entirely proper; and that uniformity as applied to occupation taxation simply means taxation that acts alike on all persons similarly situated. The differences upon

which the classification is based need not be great or conspicuous; nor is it necessary that the court perceive the precise legislative reason for the classification, for if any state of facts can reasonably be conceived that would sustain the classification, the existence of that state of facts at the time of the enactment of the law must be assumed. There is, of course, no fixed standard by which the reasonableness of the classification can be measured, and each case must stand upon its own particular facts. The Legislature has a broad discretion in the matter of classification, and the courts will not assume to review the classification unless it is clearly arbitrary. The courts will not assume to substitute their judgment as to what is reasonable and proper, or whether the classification is the wisest or best that could be made, and the classification will be held valid if the court is able to see that the Legislature could regard it as reasonable and proper without doing violence to common sense.

The constitutionality of the act is, of course, presumed; and it follows that the reasonableness of the classification is also presumed, and that the burden rests upon the objector to show that it is unreasonable. See 1 *Cooley Taxation,* 334.

Having regard for the rules that govern and guide the courts in the determination of questions of classification in matters of taxation, we are not persuaded that the classification is without a reasonable and proper basis. The occupation is, of course, the same whether pursued in boats propelled exclusively by oars or by other means of propulsion; but it is entirely possible for the legislative body to conclude that because of the extremely limited numbers that may be carried in a boat propelled exclusively by oars, the financial return must be little, and having in mind the physical labor involved, so negligible as might properly be

exempted from the imposition of the license charge altogether.

The discrimination against boats propelled in some manner other than by oars seems not clearly unreasonable for the reason that oar-propelled boats may have been deemed to afford little or no competition. The facilities for profit are not the same and a tax exaction may, and perhaps should, bear relation to the amount of a business or occupation. The following cases sustain these views: *Quong Wing v. Kirkendall,* 39 *Mont.* 64, 101 *P.* 250; *Id.,* 223 *U. S.* 59, 32 *S. Ct.* 192, 56 *L. Ed.* 350; *Town of Sumner v. Ward,* 126 *Wash.* 75, 217 *P.* 502; *Young v. City of Lexington,* 235 *Ky.* 822, 32 *S. W. 2d* 410; *Brannan v. Harrison,* 172 *Ga.* 669, 158 *S. E.* 319; *Wright v. Hirsch,* 155 *Ga.* 229, 116 *S. E.* 795; *State v. McKinney,* 29 *Mont.* 375, 74 *P.* 1095, 1 *Ann. Cas.* 579; *Gerard v. Smith, Tex. Civ. App.,* 52 *S. W. 2d* 347.

We conclude that the exemption of boats propelled exclusively by oars is a reasonable exercise of the power of classification, and that the requirements of equal protection of the laws and uniformity of taxation have been met.

2. The defendant below contends that the statute is void because it makes the license fee of a resident of the State $10 and that of a non-resident $50, and provides for a minimum fine on a resident of $50 and on a non-resident of $100. Now few principles could be clearer or the authorities more uniform than those which state that a court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it. 1 *Cooley Const. Lim., 7th Ed.,* 232; *Clark v. Kansas City,* 176 *U. S.* 114, 20 *S. Ct.* 284, 44 *L. Ed.* 392; 16 *C. J. S., Constitutional Law,* § 76, *page* 157, *et seq.* As to this question, in

its general terms, there can be no doubt, but the circumstances of this case require that some slight further consideration be given to the question. The principle seems to be one of administrative law, and has its roots in the assumption of constitutionality of an act and the disinclination of the courts to determine a moot question. When, however, the unconstitutional feature, such as discrimination against a non-resident, if it exists, is of such a character as to render the entire act void, then it would seem that the invalidity of the entire act could be asserted by any one injured by it. If the act was wholly void then, of course, no one should be proceeded against criminally under it. The principle that where the whole act is void the question of discrimination or of unconstitutionality can be raised by one not ordinarily capable of doing so has been commented on in a number of cases. *State v. Bengsch,* 170 *Mo.* 81, 70 *S. W.* 710, at page 719; *State v. Phillips,* 70 *Fla.* 340, 70 *So.* 367, *Ann Cas.* 1918*A*, 138; *McSween v. State Live Stock Board,* 97 *Fla.* 749, 122 *So.* 239, 243, 125 *So.* 704, 65 *A. L. R.* 508; *People v. McBride,* 234 *Ill.* 146, 84 *N. E.* 865, at page 868, 123 *Am. St. Rep.* 82, 14 *Ann. Cas.* 994; *People v. Huff,* 249 *Ill.* 164, 94 *N. E.* 61, at page 63; *Gherna v. State,* 16 *Ariz.* 344, 146 *P.* 494, *Ann Cas.* 1916*D*, 94; *Mountain Timber Co. v. Washington,* 243 *U. S.* 219, 37 *S. Ct.* 260, 61 *L. Ed.* 685, *Ann. Cas.* 1917*D*, 642.

■ A law may be invalid in part and the rest will be valid if the act be so separable in its terms or construction that the Legislature will be presumed to have intended the passage of the act with the invalid part omitted.

■ ■ If the invalidity be caused by an unlawful discrimination as to residence, as in this case, then the true principle seems to us to be that this discrimination can only be shown or relied on by a person who is in the class discriminated against, if the statute be separable in form

and the unconstitutional feature does not render the whole act void; where, however, the unconstitutional feature is such as to render the entire act void, no reason is apparent which should prevent anyone who is being prosecuted under the act from showing that it is no valid act at all. In *New York Central & H. R. R. Co. v. United States*, 212 *U. S.* 481, 29 *S. Ct.* 304, at page 307, 53 *L. Ed.* 613, it is said:

" * * * There is no individual in this case complaining of the unconstitutionality of the act, if objectionable on that ground, and the case does not come within that class of cases in which unconstitutional provisions are so interblended with valid ones that the whole act must fall, notwithstanding its constitutionality is challenged by one who might be legally brought within its provisions."

The matter might be tested by the application of the present facts. We may assume that the present defendant is denied the right to show the unlawful discrimination because he is not a party discriminated against; afterwards a non-resident tests the act and the court would hold the act unconstitutional as to him as being an unlawful discrimination in the conduct of a business, based solely on residence; suppose subsequently another resident again presented the question, first raised, then the court would be compelled to determine whether the act was separable, and, though unconstitutional as to the discrimination against the non-resident, whether there remained a valid and separable part. If the act was separable then the non-resident, being the only party directly discriminated against, is the only party to raise the question of unconstitutionality of the discrimination. If the act be of an integral nature so that the unlawful discrimination must make the whole act fall, then we see no reason to prevent anyone injuriously affected by the act from contesting it.

Let us then briefly see whether the act be separable or not. In one sense the legislative intent seems to have been to discriminate against non-residents, but the

primary intent of the Legislature cannot be assumed to have been to violate the Constitution of the United States. We have considered the act as a Revenue Act, and the only unconstitutional element drawn to our attention seems to have been the discrimination in the amount of the license fee and in the amount of the minimum penalty. These discriminations we think are void and the statute unlawful to that extent. A non-resident is entitled under the 14th Amendment to engage in the business here involved upon the same terms as a resident. The first section of the act makes it unlawful for anyone to engage in the business without a license. If the amount of the license fee was found discriminatory and invalid at the suit of a non-resident, it would seem that such non-resident would be entitled, by mandamus or other remedy, to a license on the same terms as available to a resident. If this be not true then one of three situations would result:

(a) The statutory terms applicable to the issuance of a license for a non-resident not being valid, no other terms could be applied and the non-resident could not lawfully engage in the business at all and thus be discriminated against;

(b) The statutory cost of license for a non-resident being void as discriminatory, then such non-resident could engage in the business without a license, leaving the licenses to be paid for solely by residents, and thus be discriminatory as to them.

(c) The statutory cost of licenses for non-residents being void as discriminatory, then such discrimination makes the entire act void and no license fees at all exacted under the act, although its intent was to raise revenue.

 We think the act separable and only the discriminatory features of the license fee and minimum pe-

cuniary penalty invalid; we think the act invalid only so far as it imposes a greater burden on a non-resident and denies to him the privileges of a resident, or the equal protection of the laws. Under the principles hereinbefore discussed, we think this discriminatory feature, as applying to a non-resident, can be raised solely by a non-resident, and cannot be raised by the defendant below, a resident.

3. We shall briefly consider the many exceptions which, by varying language, contend that the statute in question is invalid as violative of the Compact and Uniform Laws entered into between the States of New Jersey and Delaware.

For many generations the jurisdiction over the Delaware River within the Twelve Mile Circle about New Castle, and the fishing rights therein (as well as the Delaware Bay) had been an intermittent subject of controversy. Commissioners had been appointed in 1873 (*Vol.* 14, *Laws of Delaware, p.* 668) to meet with similar Commissioners from New Jersey, with a view of some settlement of the matter but, no progress being made, the Commissioners were discharged. A suit was instituted on March 3, 1877, in the Supreme Court of the United States, by the State of New Jersey, to determine the jurisdiction, but after some sporadic activity was discontinued on April 15, 1907 (*State of New Jersey v. State of Delaware,* 205 *U. S.* 550, 27 *S. Ct.* 793, 51 *L. Ed.* 925) after the execution of the Compact hereinafter considered. The question of boundaries was not finally settled until a second suit had been instituted on June 13, 1929, and determined Feb. 5, 1934. 291 *U. S.* 361, 54 *S. Ct.* 407, 78 *L. Ed.* 847.

On Feb. 13, 1905 (*Laws of Del., Vol.* 23, *c.* 216, *p.* 462) Commissioners were appointed by the State of Delaware to confer with like Commissioners representing the State

of New Jersey, for the purpose of framing a Compact or agreement between the two States, looking to the amicable termination of the suit then pending in the Supreme Court, and the final adjustment of all controversies relating to the boundary line between said States, and of their respective rights in the Delaware River and Bay.

The commissioners met and speedily framed the Compact, which was duly submitted to the General Assembly of Delaware. It was quickly approved by Delaware March 20, 1905 (*Vol.* 23, *c.* 5, *p.* 12) and appears in the *Appendix* to *Vol.* 23, *p.* 2. The Compact was ratified by the State of New Jersey, March 21, 1905, *N. J. S. A.* 52:28-34 *et seq.*, and approved by Congress, Jan. 24, 1907, 34 *Stat.* 858. Article 9 of the Compact provided "upon the ratification thereof by Congress it shall be and become binding in perpetuity upon both of said States."

Article 4 of the Compact provided that upon the execution of the Compact each State should appoint Commissioners to draft uniform laws to regulate the "catching and taking of fish in the Delaware River and Bay between said two States"; the Compact then provided "upon the adoption and passage of said laws * * * said laws shall constitute the sole laws for the regulation of the taking and catching of fish in the said river and bay between said States. Said laws shall remain in force until altered, amended or repealed by concurrent legislation of the said two States."

The Uniform Laws seem to have been adopted by New Jersey in January, 1905 (*Laws of New Jersey,* 1905, *c.* 42, and 1907, *c.* 131, *p.* 302), and by Delaware on April 23, 1907, *Laws of Delaware, Vol.* 24, *c.* 146, *p.* 272.

Notwithstanding the explicit language that the Uniform Laws so adopted should remain in force "until al-

tered, amended or repealed by concurrent legislation of the said two States" and should "constitute the sole laws for the regulation of the taking and catching of fish in the said river and bay between said States" there have been a number of instances of legislation enacted upon the subject of one State alone, but the lack of effectiveness of such legislation is not now before us.

A compact when entered into between two States and approved by Congress is said to partake of the nature of a treaty. This word was used as expressive of the highest degree of formality and contractual sanctity before some recent events removed the word as a criterion of permanency or of binding effect.

We think it unnecessary to cite the many decisions concerning the effect of a compact between the States, after approval by Congress, as set out in the comprehensive brief of the defendant. See *Couch v. State,* 140 *Tenn.* 156, 164, 203 *S. W.* 831; *Green v. Biddle,* 8 *Wheat.* 1, 5 *L. Ed.* 547; *Hinderlider v. La Plata River &c. Co.,* 304 *U. S.* 92, 58 *S. Ct.* 803, 82 *L. Ed.* 1202; 39 *C. J.* 37; *Mich. L. Rev.* 130.

Both the Compact and Uniform Laws pursuant thereto purport to deal solely with "the catching and taking of fish." The act now considered has nothing whatever to do with the "catching and taking of fish," but concerns solely the license required for the engagement in a certain business in the State of Delaware, viz., the operation for hire of a certain class of boats for a certain purpose. We think the act does not conflict with the Compact nor the Uniform Laws passed pursuant thereto.

The statute declares that upon the commission of the prohibited act the boat used in connection therewith shall be forfeited and the boat by name was declared forfeited in the judgment of conviction. The penalty seems un-

usually severe, but with this we are not directly concerned, and no exception is filed upon this point. By the forfeiture certain rights became vested in the State, 12 *R. C. L.* 126. No provision is made by law for the disposal of the boats so forfeited. The provisions of *Sec.* 3004, *Revised Code* of 1935, are manifestly not applicable to the forfeiture of boats for failure to take out a license to engage in the business of taking out fishing parties for hire. The disposition of the forfeited boat will probably be a matter for the determination of the Legislature.

The exceptions must be overruled, and the judgment below affirmed.