THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, Plaintiff, v. DAVIS G. DURHAM, Defendant.

THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, Plaintiff, v. JAMES B. DUKES, Defendant.

THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, Plaintiff, v. JAMES H. WALKER, t/a Walker's Wash & Dry, Defendant.

(*July* 17, 1959.)

CHRISTIE, J., sitting.

*Stewart Lynch*, City Solicitor, and *James M. Mulligan, Jr.*, Assistant City Solicitor, for the plaintiff.

*Edmund D. Lyons* for defendants, Davis G. Durham, James B. Dukes and James H. Walker.

Superior Court for New Castle County, Nos. 385, 386 and 496, C. A., 1958.

CHRISTIE, J.:

In all three of these civil actions the Mayor and Council of Wilmington, a municipal corporation of the State of Delaware, seeks to collect license taxes from the individual defendants.

The municipality seeks to collect the taxes pursuant to the terms of city ordinances which in turn were enacted under the authority granted to the city by the following state statute:

"Section 1. That in order to provide for the payment of its debts and expenses the Council of the Mayor and Council of Wilmington in addition to the powers now conferred upon it shall have power and authority by ordinance or ordinances to issue licenses to and to require and receive a license fee from the owner or owners of any vehicle, business, avocation, profession, pursuit, or calling, operated, carried on or engaged in, within the corporate limits of the City of Wilmington including business occupations, animals and things not now exempted by law from tax in this State; provided, however, that no license shall be required from the owner of any vehicle who is not a resident of the City of Wilmington nor shall anything in this act apply to or affect any case wherein under existing laws a gross sum is paid to the State in lieu of all taxes under any and all laws of this State nor to any railroad company engaged in operating any railroad in this State under a lease or stock ownership thereof authorized by existing law.

"And Provided Further that this Act shall not be construed as authorizing the said council to levy any license fee which shall or may have the effect to bring into operation any retaliatory or reciprocal tax or license laws of any other state or country as against corporations organized under the laws of the State of Delaware.

"Section 2. No ordinance or ordinances providing for a license or licenses under Section 1 of this Act shall become operative unless it shall receive an affirmative vote of two-thirds of all the members elected to the Council." 31 *Del. Laws*, Ch. 29 (1920).

The ordinances provide in part, as follows:

"* * * no person * * * without first having obtained a proper license therefor * * * shall within the limits of the City of Wilmington, engage in * * * the practice of medicine * * *."

"From and after the first day of April, A.D. 1953, no person or persons, firm, company or corporation, without first having

obtained a proper license therefor, as hereinafter provided, shall within the limits of the City of Wilmington, engage in, prosecute, follow or carry on any trade, business, pursuit or occupation in this section hereinafter next mentioned, that is to say: * * * Laundrette or Self-Service Laundry * * *."

Defendant Durham is a physician who conducts a very large percentage of his practice outside the city. Defendant Dukes is a physician who practices within the city but as an employee of a hospital and of another physician. Both Dr. Durham and Dr. Dukes are fully qualified and licensed by the Medical Council of Delaware to practice medicine in Delaware. Defendant Walker operates a launderette in the city.

Each defendant is charged with failure to pay a city license tax, and each defendant has asserted a number of defenses. Since the facts, as established by deposition and stipulation in each case, are undisputed, the cases are brought before the Court on motions to dismiss, for judgment on the pleadings and cross motions for summary judgment.

I shall discuss first those defenses which are common to two or more of the cases.

All the defendants maintain that the city may not collect license taxes through civil suits. This point has already been decided against Dr. Durham. See *Mayor and Council of Wilmington, etc. v. Durham,* 1958, 1 *Storey* 423, 147 *A.* 2d 516. The ruling in that reported case applies in the other two cases before the Court.

Dr. Durham and Dr. Dukes maintain that since the ordinance seeks to tax them as engaging in the practice of medicine, it goes beyond the authority granted the municipality by the statute which permits the city to require such tax only from the "owners" of a profession.

This contention is without merit. The language of the statute is not artistic since one does not usually speak of a profession

as being owned. However, the meaning of the statute is clear. By the statute the General Assembly authorizes the municipality to require a license fee from those engaged in the practice of a profession. Furthermore, a professional man may reasonably be regarded as the owner of his professional training and skills.

Dr. Dukes and Mr. Walker are being sued for taxes alleged to have become due more than three years prior to the commencements of these suits. These defendants assert that the city's claim is subject to the three year statute of limitations which reads in pertinent part as follows:

"* * * no action based on a statute * * * shall be brought after the expiration of 3 years from the accruing of the cause of such action." 10 *Delaware Code*, § 8106.

Defendants cite cases which hold that the word "statute" includes, within its scope, municipal ordinances. *John P. King Mfg. Co. v. City Council of Augusta*, 1928, 277 *U. S.* 100, 48 *S. Ct.* 489, 72 *L. Ed.* 801; *City of Los Angeles v. Belridge Oil Co.*, 1954, 42 *Cal.* 2d 823, 271 *P.* 2d 5. These defendants argue that since an ordinance amounts to a statute, the action is barred by the limitations applicable to actions based on statutes.

Plaintiff on the other hand cites the general rule of law that statutes of limitation do not run against a state or against a municipal subdivision of a state when such subdivision is acting in its sovereign or governmental capacity, unless the statute is made to so apply by express provision. 53 *C. J. S. Limitations of Actions* §§ 15, 17. Plaintiff also cites another general rule of law that, unless otheriwse provided by statute, lapse of time does not bar an action to collect a license tax. 53 *C. J. S. Licenses* § 53(e).

The general rules cited by the city do not destroy the defense based on a statute of limitations, if such statute is so worded as to clearly bar the action. I am of the opinion that the portion of 10 *Delaware Code*, § 8106, which bars actions based

"on a statute", applies to the cases before me. See *City of Los Angeles v. Belridge Oil Co., supra; McQuillan, Municipal Corporations,* § 26.78. See also *Jersey City v. Jersey City & B. R. Co.,* 1904, 71 *N. J. Law* 367, 59 *A.* 15, cited in 53 *C. J. S. Limitations of Actions* § 17 (note 8) where a similar conclusion is reached based on a rather strained interpretation of contract law.

I conclude that the three year statute of limitations does apply to the claims here asserted and that any right of action accruing more than three years prior to the filing of an action based thereon is barred by the specific terms of 10 *Delaware Code,* § 8106.

### City v. Durham

Dr. Durham is a specialist whose medical practice is confined to the treatment of eyes. His office is located just outside the city limits of Wilmington.

The undisputed evidence indicates that only about 2% of Dr. Durham's patients are treated by him within the city limits. However, as a leading eye specialist, Dr. Durham is consulted by about 5,000 persons a year. The 2% of his patients whom he treats within the city limits constitute several dozen individuals who require his special skills and the special facilities offered by the hospitals located within the city.

Dr. Durham is on the professional staff of the Delaware Hospital, as attending chief in the Department of Ophthalmology. This hospital is located within the city and obtains some financial benefits from the city.

Since there are no hospitals in New Castle County outside the city which offer the facilities required by Dr. Durham's specialty, he has no choice but to send most of his patients who require hospitalization to hospitals within the city.

Dr. Durham maintains that he has not engaged in the practice of medicine in the municipality within the meaning of the ordinance.

The ordinance as written would appear to admit of no exceptions. It seems to say that no person shall practice medicine in the city without first having obtained a license. A single application of special medical knowledge or skill might be interpreted as constituting the practice of medicine.

However, decisions exist in which courts of other jurisdictions have held that to engage in the practice of a profession within the meaning of a tax ordinance, one must do more than occasionally perform isolated professional services in the municipality. *City of Mayfield v. Reed,* 1939, 278 *Ky.* 5, 127 *S. W.* 2d 847; *Karnes v. City of Benton,* 1935, 258 *Ky.* 425, 80 *S. W.* 2d 558; *McQuillan Municipal Corporations* (3rd Edit.) § 26.48.

Defendant maintains that his professional visits to Wilmington amount to isolated visits. The city readily agrees that a professional man coming within the city on isolated professional visits is not subject to the license tax, but insists that Dr. Durham's professional visits are so numerous and regular as to constitute the practice of medicine within the city.

In determining whether a professional man is practicing in a city within the meaning of a general licensing ordinance, there are many factors to be considered. Among the factors which seem significant to me in this case are the following:

(1) The approximate number of persons seen or time spent by the professional man within the city.

(2) The significance of that portion of the practice which took place in the city in relation to his other practice.

(3) The regularity of professional visits to the city.

(4) The degree to which the city practice is incidental to the practice of others already licensed by the city.

(5) Any declarations or professional affiliations of the individual which would indicate the practice of the profession within the city.

■ If one makes several professional visits a year to a particular city, he is certainly practicing there, even if such visits are a very small percentage of his total practice. I think that more than a dozen professional visits would, under most circumstances, be deemed to be "several" and would constitute the practice of the profession within the city.

In Dr. Durham's case, the use of the hospital facilities located in the city and his professional visits there constitute an important, though small, part of his professional practice.

■ A member of the professional staff of a city hospital who treats several patients there each year would, in the absence of special circumstances, be subject to the terms of the ordinance. This rule would apply with particular force when almost all of a physician's patients requiring hospitalization are regularly hospitalized within the city.

■ I conclude that Dr. Durham does practice within the city and that his professional visits do not consist of merely isolated visits. Therefore, he is subject to the terms of the taxing ordinance and must pay those taxes which are not barred by the three year statute of limitations.

Since these are friendly suits brought more for a clarification of the meaning of the ordinances than for the particular license fees here involved, I have tried to list the factors which might be deemed significant in such cases. It would be even better if this Court could lay down a simple easy-to-apply rule as to what acts constitute practicing a profession in the city and what acts are merely isolated professional visits not amounting to practice. Unfortunately, it is impossible to reduce such a complex subject to a simple rule.

### City v. Dukes

During the entire time here in question, Dr. Dukes has been on the staff of the Delaware Hospital, Inc. located within the city limits of Wilmington in the Radiology Department as an

employee of Dr. W. W. Lattomus, Director of the Department. During a part of the time, he had additional duties as an employee of the hospital. He has no patients of his own or any private practice. The hospital, in consultation with Dr. Lattomus, sets the rates charged to patients treated by its Radiology Department and Dr. Lattomus receives as compensation a percentage of the funds collected for services rendered by that department. Dr. Lattomus in turn pays Dr. Dukes an agreed upon percentage of the funds Dr. Lattomus receives.

Dr. Dukes admits that his duties as assistant in the Radiology Department would constitute the practice of medicine if carried on in private, but he contends that the licensing ordinance does not require him to obtin a license under the above outlined circumstances of employment.

Defendant's argument on this point is based largely on the language of the statute quoted at the beginning of this opinion. I have already ruled that under the statute, the city is authorized to pass an ordinance taxing those practicing medicine in the city, and that the wording of the statute which defendants read as limiting the city's taxing powers to the "owner" of a profession has no real significance as applied to these cases.

The question remains—is a professional man employed by another and rendering professional services to the public practicing his profession within the meaning of the ordinance?[1]

█ It seems clear to me that the tax ordinance imposes a tax on the practice of the profession on an individual basis and not upon a group basis. I conclude that the acts done and the services rendered must be inspected. Thus, the issue must be resolved by what the individual does and for whom he does it and not by how he gets paid for it. If such acts and services constitute what is generally understood to be the practice of

---

[1]Since these suits were filed, a new ordinance was enacted making the tax inapplicable to any individual who is in the employ of any person, firm or corporation licensed thereunder and who does not practice his profession, except in his capacity as an employee.

medicine and his services are generally available to those needing them, a doctor is practicing medicine and the business arrangements between such doctor and his employer do not change such practice into something else.

I conclude that Dr. Dukes was practicing medicine within the meaning of the ordinance and that he is liable for the license taxes, except insofar as such claims are barred by the three year period of limitations.

### City v. Walker

Defendant Walker conducts a launderette business within the city limits of Wilmington. He has no license for such business.

During the years in question, his business used about 22 washing machines and an undisclosed number of dryers. Mr. Walker's launderette does not use the coin operated machines which were common when service laundries first became popular. At Mr. Walker's launderette, customers leave bundles of clothes to be washed by defendant's employees. Mr. Walker provides all of the soap and other laundry materials used, and his employees load and unload the machines. The customers return later and pick up the clean clothes.

Regular laundries are required to pay an annual license tax of $50. Launderettes or self-service laundries are required by the ordinance here challenged to pay an annual license tax of $6 per machine. Thus, a launderette using more than 8 machines is required to pay a higher tax than a regular laundry, although each business performs essentially the same service and the regular laundry may employ any number of machines and have a volume of business many times as large as the launderette.[2]

---

[2]After these actions were pending, City Council enacted a new ordinance which appears to have done away with any distinction between laundries and launderettes.

Thus, this decision will be significant only in determining the amounts of delinquent taxes, if any, due from those launderettes who failed to obtain licenses during the preceding three years.

Article 8 of the Constitution of the State of Delaware, *Del. C. Ann.*, provides, in part, as follows:

"Section 1. All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws * * *."

Defendant Walker argues that the application of the city ordinances so as to tax his business at more than $50 per year is in clear violation of the above quoted constitutional restriction.

The defendant further argues that even if the uniform taxation provisions of the constitution are deemed inapplicable to license charges imposed by municipal corporations, the ordinances imposing such taxes are subject to the requirements of equal protection of the laws. *Conard v. State*, 1940, 2 *Terry* 107, 16 *A.* 2d 121; 38 *Am. Jur., Municipal Corporations*, § 346.

If this license tax is based on a reasonable classification of the subjects taxed, it would be deemed uniform and also it would afford equal protection. If the classification is unreasonable, the tax is unconstitutional by either test. *Conard v. State, supra.*

Some of the many cases passing upon the reasonableness of licensing tax classifications are collected in 43 *A. L. R.* 592 and 99 *A. L. R.* 703 and in 9 *McQuillan, Municipal Corporations*, §§ 26.59 and 26.60. However, the collected cases from other jurisdictions are not particularly helpful since each such case depends upon the application of a particular ordinance to a narrow factual situation.

As to the ordinances before the Court, it seems clear that the term laundry includes operations, such as those conducted by Mr. Walker. And although there are definite differences between a "regular" laundry and a "launderette" type laundry, I can find no reasonable basis for taxing a "launderette" at a rate which as applied in this case is more than double that

of others in the same business. Accordingly, I conclude that the license tax ordinance on launderettes, as it applied to Mr. Walker's business, was arbitrary and therefore invalid. It follows that defendant Walker is liable only for the tax on laundries. Since the suit against Mr. Walker was based entirely upon an invalid section of the ordinance, this Court cannot in this action order payment under another ordinance, although such payment is clearly due.

\*      \*      \*      \*      \*      \*

Other points raised by the parties have been resolved so as not to be inconsistent with the results herein announced.

An order will be entered granting summary judgment in favor of the city against Dr. Durham and Dr. Dukes for the license taxes which became due not more than three years prior to the filing of these suits. Another order will be entered granting summary judgment in favor of Mr. Walker, such order to make it clear that it does not preclude Mr. Walker's liability to pay a tax on a laundry under another ordinance.