**EFiled: Sep 18 2017 04:24PM EDT**
**Transaction ID 61130333**
**Case No. 12347-VCS**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CAMDEN-WYOMING SEWER    :
WATER AUTHORITY,    :
   :
       Plaintiff,    :
   :   C.A. No. 12347-VCS
     v.    :
   :
TOWN OF CAMDEN,    :
   :
       Defendant.    :

# MEMORANDUM OPINION

Date Submitted:  August 9, 2017
Date Decided:  September 18, 2017

Mary E. Sherlock, Esquire of Weber Gallagher Simpson Stapleton Fires & Newby, LLP, Dover, Delaware, Attorney for Plaintiff.

Craig T. Eliassen, Esquire and William W. Pepper Sr., Esquire of Schmittinger and Rodriguez, P.A., Dover, Delaware, Attorneys for Defendant.

**SLIGHTS, Vice Chancellor**

This case concerns a municipality's authority (or not) to exact a $27,000 charge from a sewer and water authority for a building permit. Plaintiff, Camden-Wyoming Sewer and Water Authority (the "Authority"), undertook to construct a one million gallon water storage tank in Camden, Delaware (the "Water Storage Tank" or "Tank"), which was to serve that town's residents. In connection with this project, the Authority applied for a building permit from defendant, Town of Camden, and requested that the Town waive any building permit fees. The Town declined to do so, and refused to issue the Authority a building permit for the Water Storage Tank until the Authority paid the Town a $27,000 "building permit fee." The Authority did not pay the $27,000 charge, which prompted the Town to issue a "stop work" order respecting the Tank. The Authority filed this suit shortly thereafter, seeking the following relief:

1. a preliminary injunction enjoining the Town from restricting the completion, use, maintenance, and operation of the Tank;

2. a permanent injunction enjoining the Town from restricting the use, maintenance, and operation of the Tank; *and*

3. a declaratory judgment to the effect that the Town cannot assess the $27,000 "building permit fee" against the Authority.[1]

The Court declined to grant the preliminary injunction sought by the Authority, and the parties have since briefed and argued cross-motions for summary

---

[1] Verified Compl. for Prelim. Inj., Permanent Injunctive Relief and a Declaratory J. ¶¶ 30–31 (May 17, 2016) ["Compl."].

1

judgment. At the Court's request, the parties have also submitted supplemental briefing on certain discrete issues, including whether the $27,000 "building permit fee" imposed by the Town of Camden is, in actuality, a tax from which the Authority is statutorily exempt.

For the reasons that follow, I have concluded that the $27,000 charge, although labeled a "permit fee," is actually, in this particular case, a tax. Under 16 *Del. C.* § 1410, the Authority is exempt from taxation. Therefore, the Authority's motion for summary judgment will be granted.

## I.     BACKGROUND

The facts are drawn from the parties' stipulated statement of facts, the evidentiary record developed by the parties through discovery and those matters of which the Court may take judicial notice.

### A. The Parties

Plaintiff, the Authority, is a duly organized sewer and water authority, established by the Towns of Camden and Wyoming pursuant to 16 *Del. C.* § 1402.[2] Since the Authority's establishment in 1962, it has constructed pump stations and

---

[2] Parties' Stipulated Statement of Facts ¶¶ 1, 3 (Aug. 26, 2016) ["Stip."]. As noted, the Authority is a creature of statute: [T]he governing body of [one or more] municipalit[ies] . . . [may create] an authority to acquire, construct, reconstruct, extend, repair, improve, maintain and operate" a "water system, sewer system [or] any combination or part or parts thereof . . . ." 16 *Del. C.* §§ 1402(a)(1), 1401(9).

2

other water infrastructure within the boundaries of both Camden and Wyoming.[3] Today, the Authority owns and operates the water system and infrastructure for both Towns, generating operating revenue by charging fees for water and sewer services.[4]

The Authority is organized as a non-stock corporation and operates under the direction of a six-member board of directors ("Board").[5] The Authority's Board consists of three residents of Camden appointed by the Camden Town Council and three residents of Wyoming appointed by the Wyoming Town Council.[6] By virtue of the Authority's status as a sewer and water authority, the Authority is exempt from state, county, and municipal taxes.[7]

Defendant, Town of Camden, is an incorporated municipality located in Kent County, Delaware. The Town's governing body is the Camden Town Council,

---

[3] Stip. ¶ 8.

[4] *Id.* ¶¶ 5–6

[5] *Id.* ¶¶ 4, 7.

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 4; 16 *Del. C.* § 1410 ("No authority shall be required to pay any taxes or assessments upon any project acquired, constructed or operated by it under this chapter or upon the income therefrom . . . .").

which comprises a mayor and four council members.[8]  The Camden Town Council is empowered to regulate the issuance of building permits, among other things.[9]

### B. The Water Storage Tank

The Water Storage Tank is located at 3680 Upper King Road, Camden, Delaware (the "Property").[10]  The Authority purchased the Property on February 14, 2014.[11]  The Property was originally in the un-annexed boundaries of Kent County, but on December 1, 2014, was annexed into the Town of Camden.[12]

On April 23, 2015, the Authority submitted a building permit application to the Town of Camden, attaching detailed plans, drawings, photographs and specifications for the proposed Water Storage Tank and its foundation.[13]  At that time, the Authority requested in writing that the Town waive any building permit fees, as the Town had done in the past.[14]  The Town denied this request.  Instead, on

---

[8]  Charter of the Town of Camden § 4 ["Camden Charter"].

[9]  Camden Charter § 25(a.)(20.).

[10] Stip. ¶ 9.

[11] *Id.* ¶ 11.

[12] *Id.* ¶¶ 10, 12.

[13] *Id.* ¶ 14.

[14] *Id.* ¶ 15; *see* Affidavit of Harold L. Scott ¶¶ 5–6 (Aug. 25, 2016).

August 3, 2015, the Town resolved to charge the Authority a $27,000 "building permit fee" in connection with the Tank's construction.[15]

The Town refused to issue a building permit for the Water Storage Tank until the $27,000 charge was paid.[16] The Authority, in turn, refused to pay the $27,000 charge. In its riposte, the Town issued a "stop work" order respecting the Water Storage Tank on April 18, 2016.[17] This litigation followed.

## C. Procedural Posture

The Authority filed its complaint against the Town of Camden on May 17, 2016. Thereafter, the parties quickly agreed to a scheduling order that included the filing of a stipulated statement of facts by the end of August 2016.[18]

---

[15] Stip. ¶¶ 16–17.

[16] *Id.* ¶ 18.

[17] Compl. Ex. I (the "stop work" order); Def.'s Supplemental Mem. of Law 4 (Apr. 10, 2017) ["DSML"]. In August 2016, the parties entered into an agreement whereby the Authority deposited the disputed $27,000 charge into defense counsel's escrow account in exchange for the Town of Camden's lifting the "stop work" order on the Water Storage Tank (the "Escrow Agreement"). Pl.'s Answering Br. in Opp'n to Def.'s Mot. for Summ. J. 2 (Sept. 16, 2016) ["PAB"]. The Water Storage Tank is now full of water and operational. Letter from Mary E. Sherlock, Esq. to Vice Chancellor Slights Concerning Status of Water Storage Tank (Aug. 9, 2017) ("[The Authority's] new water tank is filled and has been activated and up and running for approximately one and a half months.").

[18] Stipulated Scheduling Order ¶ 3 (July 1, 2016).

The parties were able to stipulate to most of the relevant facts, which allowed for limited discovery followed by cross-motions for summary judgment. [19] Oral argument on those motions was held on December 29, 2016.

At the close of that argument, the Court requested that the parties submit supplemental briefing on certain discrete issues, including whether the $27,000 "building permit fee" charged by the Town of Camden for the Water Storage Tank is, in actuality, a tax from which the Authority is statutorily exempt. The parties submitted simultaneous supplemental briefs addressing this issue, and the Court heard additional oral argument on August 9, 2017.

## II. ANALYSIS

The parties' cross-motions for summary judgment require the Court to determine whether the Town of Camden may exact the disputed $27,000 charge from the Authority. Here, the dispositive question is whether that $27,000 charge is properly characterized as a "fee" or a "tax" in legal contemplation.[20] The parties' cross-motions are governed by a well-settled standard of review.

---

[19] The parties' Escrow Agreement obviates any need for injunctive relief in this case. The only remaining relief that the Authority seeks is a declaratory judgment to the effect that it need not pay the disputed $27,000 charge to the Town. PAB at 2.

[20] The Town contends that "[t]he Authority should be precluded from . . . arguing that [the $27,000 charge] is grossly disproportionate." DSML at 8. Specifically, the Town's rationale is that the $27,000 charge was a "compromise fee," given that (1) "[T]he Authority suggested the amount of the fee in its counsel's July 14, 2015, letter[,] [which] provided data as to the amount of the building permit fee it would have paid to Kent County [$27,183.50], Sussex County and New Castle County"; and (2) "One of [the Authority's]

6

## A. Standard of Review on Cross-Motions for Summary Judgment

Under Court of Chancery Rule 56(h), "[w]here the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits

---

Board members [Mr. Ridgely] specifically endorsed the [$27,000 charge] at the August 3, 2015, meeting of the Camden Town Council." *Id.* at 7–8; Def.'s Answer Exs. A and B (June 6, 2016) ["Ans."].

The Town's argument in this regard falls flat for two reasons. *First*, the Town's argument is, in essence, an estoppel-based argument. The Town has not pled estoppel. *See generally* Ans. Of course, estoppel is an affirmative defense, Ct. Ch. R. 8(c); and, as such, it generally "must be pled or [it will be] waived" and excluded from the case. *James v. Glazer*, 570 A.2d 1150, 1153 (Del. 1990). Here, because the Town has failed to plead estoppel, the Town has forfeited that defense. *Second*, even if the Town had properly pled estoppel, the Town has failed to establish the elements of that defense. To establish estoppel, the party asserting it must show by clear and convincing evidence that "(i) [it] lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) [it] reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) [it] suffered a prejudicial change of position as a result of [its] reliance." *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005), *aff'd*, 884 A.2d 512 (Del. 2005). Here, the Town has not adduced clear and convincing evidence that it lacked the means of obtaining knowledge of the Authority's true position concerning the $27,000 charge. Nor has the Town adduced clear and convincing evidence that the Authority manifested assent to pay $27,000 as a "compromise fee." The July 14, 2015 letter from the Authority's counsel to the Town does not manifest such assent. That letter first "formally request[s] that the Town . . . reconsider waiving its construction Permit Fee . . . ." Ans. Ex. A, at 1. It is only "[i]n the alternative" that the letter "request[s] that the Town consider a substantial reduction of its Permit Fee [to] bring[] it in line with [fees charged by] the three counties . . ." (which average $28,165 in the case of the Water Storage Tank). *Id.* at 2. No reasonable reader could conclude that this latter, alternative request is a manifestation of assent by the Authority to pay $27,000 as a "compromise fee." Nor is it of legal import that one of the Authority's Board members, Mr. Ridgely, "specifically endorsed" the $27,000 charge at the Camden Town Council's August 3, 2015 meeting. The record does not establish that Mr. Ridgely spoke for the Authority's Board as a whole (or that he was authorized to do so).

7

based on the record submitted with the motions."[21]  Here, the parties have filed cross-motions for summary judgment, and neither has argued that there is any issue of material fact that would prevent the Court from deciding the motions as a matter of law based on the record that has been submitted.  Accordingly, the Court will decide the parties' cross-motions as a matter of law based on that record.

## B. "Fee" or "Tax"

Whether the Town of Camden may exact the $27,000 charge from the Authority turns on whether that charge is legally characterized as a fee or a tax.  The Authority is a sewer and water authority established pursuant to 16 *Del. C.* § 1402,[22] and such authorities are exempt from state, county and municipal taxes.[23]  Thus, if the disputed $27,000 charge is actually a "tax," then the Town may not exact that charge from the Authority (and the Authority need not pay it).

It is often difficult to determine whether the government's exaction of a sum of money constitutes a "fee" or a "tax."[24]  Our Superior Court's opinion in *City of*

---

[21] Ct. Ch. R. 56(h).

[22] Stip. ¶¶ 1, 3.

[23] 16 *Del. C.* § 1410 ("No authority shall be required to pay any taxes or assessments upon any project acquired, constructed or operated by it under this chapter or upon the income therefrom . . . .").  *See also* Stip. ¶ 4.

[24] *See Conard v. State*, 16 A.2d 121, 124–25 (Del. Super. Ct. 1940) ("It is frequently difficult to determine whether the imposition of a charge or fee by the government is an exercising of the police power or of the taxing power.").

8

*Wilmington v. McDermott*,[25] however, provides meaningful guidance here: "A tax is a pecuniary burden, exacted by legislative authority, upon individuals or property to support the government. A tax is an enforced contribution, not a voluntary payment . . . [and is imposed] without reference to peculiar benefits to particular individuals or property."[26]

A fee, by contrast, is a pecuniary exaction the "primary object" of which is to regulate "relative rights, privileges or duties as between individuals," or otherwise, to protect "the safety of the public . . . ."[27] Fees function to offset the incremental costs (to the government) of "regulating" the fee payer or policing particular safety risks associated with the fee payer's conduct.[28]

---

[25] 2008 WL 4147580 (Del. Super. Ct. Aug. 26, 2008).

[26] *Id.* at *2.

[27] *Conard*, 16 A.2d at 125.

[28] *See* 9 Eugene McQuillin, *The Law of Municipal Corporations* § 26:16 (3d ed. 1966) ("[C]harges to cover the cost of regulation of a business or occupation and not to raise revenue are license fees and not taxes for revenue.") (footnote omitted); *cf. id.* at § 26:17 ("In determining whether a charge imposed by a local government is a . . . regulatory fee or a[] . . . tax, [relevant considerations include] . . . whether the money collected from the fees is segregated and allocated exclusively to regulating the entity or activity being assessed[;] and . . . whether a direct relationship exists between the rate charged and either a service received by the fee payers or a burden to which they contribute.") (footnote omitted).

9

That the government labels a particular pecuniary exaction a "fee" does not make it so.[29] For instance, if the amount of a permitting "fee" is "grossly disproportionate" to the government's direct and indirect permitting costs, the "fee" then "becomes a tax . . . ."[30] More generally, if there is no "direct relationship . . . between the [fee] charged and either a service received by the fee payer[] or a burden to which [it] contribute[s]," then a purported "fee" is more properly characterized as a tax.[31] This follows from *McDermott*'s conception of taxation; namely, that taxes are compulsory pecuniary exactions from individuals or property, imposed in order to support the government and "without reference to peculiar benefits to particular individuals or property."[32]

## C. The $27,000 Building Permit Fee Imposed by the Town of Camden is Actually an Impermissible Tax.

---

[29] *See id.* at § 26:17 ("The name by which the exaction is described is immaterial in determining whether it is a regulatory fee or a revenue-raising tax. Instead, the incidents of an exaction are to be considered in determining its true character. The distinction between a tax and a [fee] is not one of names, but one of substance.") (footnotes omitted); *State v. Harbor House Seafood*, 1997 WL 1704528, at *2 (Del. Com. Pl. Apr. 2, 1997) ("[A regulatory] fee must be reasonable and related to the cost of such regulation. . . . [I]f the fee exacted is 'grossly disproportionate' to [those] expenses, it becomes a tax . . . .").

[30] *Harbor House Seafood*, 1997 WL 1704528, at *2.

[31] 9 McQuillin, *supra* note 28, at § 26:17; *cf. Conard*, 16 A.2d at 125 ("When the payment of [a license] fee allows the carrying on of the business without the performance of any other condition, and the license is subject to no restriction or regulation, and no option exists to refuse the issuance of the license, then the payment of the license fee is a tax for revenue.").

[32] 2008 WL 4147580, at *2.

In this particular case, the $27,000 charge imposed by the Town of Camden is properly characterized as a tax. The charge is a pecuniary exaction from the Authority that, by all accounts, was calculated "without reference to peculiar benefits to [the Authority] or [to the Property]."[33] It is a "compulsory" charge in that the Town will not issue a building permit for the Tank unless and until that charge is paid.[34] And the Town's exaction of that charge will support the Town's government generally (as opposed to supporting any licensing or inspection function); indeed, building permit fees ultimately go to the Town's general revenue fund.[35] Simply stated, there is no "direct relationship" between the amount of the charge and the Town's provision of services or expenditure of funds respecting the Water Storage Tank project.[36] The Town has not directed the Court to any evidence of such a relationship—save for the Town's provision of certain police patrols in the Tank's vicinity.[37]

---

[33] *Id.*

[34] *See* Stip. ¶ 18.

[35] *See* Deposition of Jamie Fenske 29:11-21 (Feb. 21, 2017); Pl.'s Legal Mem. of Law Ex. D, at 5-13 (Town of Camden Budget, FYs 2016 and 2017) (Apr. 10, 2017).

[36] 9 McQuillin, *supra* note 28, at § 26:17; *see Harbor House Seafood*, 1997 WL 1704528, at *2 ("[A regulatory] fee must be reasonable and related to the cost of such regulation. . . . [I]f the fee exacted is 'grossly disproportionate' to [those] expenses, [then] it becomes a tax . . . .").

[37] *See* Affidavit of William E. Bryson ¶¶ 2–4 (Mar. 2, 2017).

The deposition testimony of the Town's clerk, Jamie Fenske, does not quantify the amount of time, effort, administrative resources, etc. that she and Harold Scott, Jr., the Town's code enforcer and building inspector, dedicated to the Water Storage Tank project.[38] Nor does such quantitative information appear elsewhere in the record. Without such information, the Court cannot discern any "direct relationship" between the disputed $27,000 charge and either a service received by the Authority or a burden associated with the Authority's construction of the Water Storage Tank.[39]

With regard to the Town's provision of police patrols in the Tank's vicinity, the record does not show that the Town incurred substantial costs to provide that specific service.[40] More to the point, the record does not show (or even suggest) that the construction of the Water Storage Tank materially changed the Town's ordinary

---

[38] *See generally* Fenske Dep.

[39] Had the Authority paid the disputed $27,000 charge, the Town of Camden would have issued a building permit for the Water Storage Tank. *See* Fenske Dep. 39:3–40:2, 41:15–22. Yet the record does not show (or even suggest) that the Town has incurred anywhere near $27,000 in direct and indirect costs in connection with processing the Authority's application for a building permit for the Tank or otherwise in connection with the Tank project. *See id.* at 31:20–34:5. Nor does the record indicate that the Town would have incurred such costs had it issued that building permit. *See id.*

[40] The affidavit of Mr. Bryson, the Town's Chief of Police, states, "Over the last 17 months, or so, my officers have performed many patrol checks of the site [of the Water Storage Tank], both during construction and since construction has been completed." Bryson Aff. ¶¶ 1, 4. This phrasing suggests that an officer's beat generally includes "patrol checks" of various different areas; however, it does not suggest that the construction of the Water Storage Tank necessitated a *quantifiable* increase in the Town's spending on police patrols.

12

policing activities or otherwise necessitated increased spending on police patrols—at least not to the tune of roughly $27,000 in additional expenditures.

In addition, Ms. Fenske further testified that, to her knowledge, the Town did not contract with its usual go-to contract engineer, Kevin Minick, to conduct any review or inspection of the Water Storage Tank.[41] And the Town's counsel represented at oral argument that Mr. Minick in fact did not do *any* contract work on the Tank, and that the Town heavily deferred to the Authority's own engineer.[42] If that is the case, then the amount of the disputed charge—$27,000—appears even more disproportionate relative to the Town's (limited) undertakings with respect to the Water Storage Tank project.

\* \* \* \* \*

Based on the record, the Court has determined (1) that the $27,000 charge imposed by the Town is a compulsory pecuniary exaction from the Authority that goes to support the Town's government generally, and (2) that there is no "direct relationship" between the amount of that charge and either a service received by the Authority or a burden associated with the Authority's construction of the Water Storage Tank. Accordingly, the Court holds, as a matter of law, that the $27,000

---

[41] Fenske Dep. at 14:8–15:4.

[42] Tr. of Aug. 9, 2017 Oral Arg. 17:15–18:7.

charge imposed by the Town is, in this particular case, a tax. As a sewer and water authority, the Authority is statutorily exempt from such a tax.[43] It need not pay the $27,000 charge.

### III. CONCLUSION

For the foregoing reasons, the Authority's motion for summary judgment is GRANTED, and the Town of Camden's motion for summary judgment is DENIED. The Authority shall submit an implementing order, on notice to the Town of Camden, within 10 days.

---

[43] 16 *Del. C.* § 1410 ("No authority shall be required to pay any taxes or assessments upon any project acquired, constructed or operated by it under this chapter or upon the income therefrom . . . .").