In re: THE ESTATE OF CARL A. ZOLLER, JR., Deceased.

(*June* 2, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Daniel J. Layton, Jr.*, for the appellants from the Register of Wills of Sussex County.

*Arthur Dean Betts* (of Ennis and Betts) for the Register of Wills of Sussex County.

*Howard T. Ennis, Jr.*, Deputy Attorney-General for Sussex County, and *H. Edward Maull*, Attorney for the Levy Court of Sussex County; *N. Maxson Terry*, Attorney for the Levy Court of Kent County; and *Clarence W. Taylor*, Attorney for the Levy Court of New Castle County; all appearing *Amici Curiae*.

Supreme Court of the State of Delaware, No. 57, 1960.

SOUTHERLAND, C. J.:

The Orphans' Court of Sussex County has certified to us three questions of law arising out of the probate proceedings affecting the estate of Carl A. Zoller, deceased.

The pertinent facts are these:

At the time of his death Zoller was a resident of Sussex County. His will was proved and the First Pennsylvania Banking and Trust Company of Philadelphia and Edmond L. Jones, of Washington, D. C., qualified as executors.

Upon presentation to the Register of Wills of their first account the executors were charged the sum of $10,996.02 for the examination, adjustment and settlement of the account. The executors paid the sum under protest, contending that the statute under which the sum was charged was unconstitutional. They then appealed to the Orphans' Court and again challenged the validity of the applicable statute, which is found in 12 *Del. C.* § 2522.

That section, so far as here pertinent, reads:

"The fees of the Register of Wills in Sussex County, for the services specified, shall be as follows:

\* \* \* \* \* \*

"For adjusting, settling and certifying accounts, one per cent of the net personal estate, disregarding all disbursements made, or to be made, for legacies, bequests or distributive shares due to legatees, heirs-at-law, or persons otherwise entitled."

The executors contend that these charges, although termed fees, are in law taxes, because the amount of the charges bears no reasonable relation to the services rendered, the charges being manifestly imposed to raise revenue for county purposes. As taxes, they contend, they violate the provisions of Article VIII, Section 1, of our Constitution, *Del. C. Ann.*, respecting uniformity.

The questions certified to us are as follows:

"1. Is the fee of the Register of Wills in Sussex County for adjusting, settling and certifying accounts as provided for by 12 *Del. C.* 2522 a tax and, if so, does it comply with the requirements of Article 8, Section 1 of the Constitution of the State of Delaware that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax?

2. If the fee charged does not comply with the requirements of Article 8, Section 1 of the Constitution of the State of Delaware what fee or scale of fees, if any, may the Register of Wills of Sussex County lawfully charge the estate here involved?

3. The fee having been paid by the appellants to the Register of Wills of Sussex County under protest and by him delivered to the County Treasurer as required by law, should all or any part thereof be refunded to the appellants?".

Question 1 is in reality two questions; the first is whether the charges are in law taxes.

The applicable principle of law is stated in 51 *Am. Jur.*, "Taxation", § 14, as follows:

"§ 14.—Court and Probate Fees.—Court fees, such as a small fee exacted upon the issuance of writs or process out of courts of record, which are manifestly intended to reimburse the government for the cost of some service rendered to individuals, are not ordinarily considered as taxes. But an arbitrary standard of probate fees graded according to the value of the estate and manifestly intended for the purpose of raising revenue has been decided to be a tax, and the same has been held true as to a fee of a certain percentage of judgments obtained."

See *Smith v. Carbon County*, 90 *Utah* 560, 63 *P.* 2d 259, 108 *A. L. R.* 513, and other cases cited in the annotation at page 518.

Clearly, the statute here involved provides for fees of such size that they cannot reasonably be held to have any reasonable relation to the work done by the Register. In the instant case the charge exceeds $10,000. These "fees" do not go to the Register for the maintenance of his office, but are paid over to the County Treasurer for general county purposes. 9 *Del. C.* § 9108.

Prior to 1905 they ,with other fees, constituted the Register's compensation. The Act of April 6, 1905 (23 *Del. L.* c. 60) abolished the fee system.

Originally the fees were on a modest scale, and although always graduated according to the value of the estate, could be said to be proper as a reasonable method of fixing compensation. See 2 *Del. L.* pp. 113-115; *Code of* 1852, c. 25. Even under the Act of 1867 (13 *Del. L.* c. 159) the highest

bracket in the scale was twenty-five cents per $500, or one-twentieth of one per cent.

After the fee system was abolished, the Register's fees were increased. Thus, by two acts passed two years later the top bracket was raised one-quarter of one per cent for all the counties. See the Act of March 29, 1907, 24 *Del. L.* c. 246, relating to Kent and Sussex Counties, and the Act of April 4, 1907, 24 *Del. L.* c. 247, relating to New Castle County. There have been subsequent changes, but they are not important for our present purpose.

The history of these statutes suggests that after the Registers of Wills became salaried officers the legislature decided to use the charges of the offices as additional sources of county revenue. Certainly that is what they are now. One account filed in 1929 in New Castle County yielded charges of $20,000, the statutory maximum in that county (36 *Del. L.* c. 275); and an account filed in Sussex County about ten years ago yielded $161,000 under the present top bracket of one per cent. It cannot with any reason be suggested that such charges are fees for official services. Their purpose and effect is to raise revenue. In our opinion they are taxes.

Counsel for the Register of Wills relies on *Highfield v. Delaware Trust Co.*, 8 *W. W. Harr.* (38 *Del.*) 116, 188 *A.* 919, 921. In that case the late Chief Justice Layton reviewed the statutory history of the Registers' fees, and, referring to the acts of 1907, above mentioned, said:

"The acts were not, in any proper sense, revenue measures, although the result may have been, especially in New Castle County, the production of revenues more than sufficient for the maintenance of the offices."

Since the case presented only the question whether an executor was liable for additional charges on filing a second and final account, the statement was clearly dictum. It was unnecessary to the decision. Granting that any dictum uttered

by such an able judge is entitled to serious consideration, we are nevertheless of opinion that it was an error and ought not to be accepted as the law, for the reasons we have already stated.

We accordingly hold that the charge collected from the executors in this case was a tax.

The second question presented by Question 1 of the certified questions is whether the tax violates our constitutional provision respecting uniformity.

Section 1 of Article VIII reads:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the General Assembly may by general laws exempt from taxation such property as in the opinion of the General Assembly will best promote the public welfare."

The executors say that the tax is not uniform because—

(a) The tax is a property tax, and the rates fixed are not uniform, *i.e.*, the tax is graduated arbitrarily according to the size of the estate.

(b) The rates charged in the three counties are different, and hence the tax is not uniform within the territorial jurisdiction of the levying authority—the State itself.

As to (a):

The error in this argument is that the tax with which we are here concerned is not a property tax. It is an estate tax, or at least a tax in the nature of an estate tax. It is one of the several types of taxes or duties which depend for their incidence upon the occasion of death. The historical development of such taxes is exhaustively set forth in the opinion of Mr. Justice White in *Knowlton v. Moore,* 178 *U. S.* 41, 20

*S. Ct.* 747, 750, 44 *L. Ed.* 969. That case concerned the constitutionality of the Federal Revenue Act of 1898, 30 *Stat.* 448, levying a tax on legacies and distributive shares. It was argued that it was a direct tax and unconstitutional because not apportioned as required by the Constitution. The argument was rejected.

Referring generally to death duties, the Court said:

"Taxes of this general character are universally deemed to relate, not to property *eo nomine,* but to its passage by will or by descent in cases of intestacy, as distinguished from taxes imposed on property, real or personal, as such, because of its ownership and possession."

The development of such taxes in England, the Court said, derived from a "probate duty" established in 1694. This was "a fixed tax dependent on the sum of the personal estate * * * payable on the grant of letters * * *". This was supplemented later by a legacy tax, and by a succession tax. Still later the probate charge was superseded by the "estate duty".

The Court summarized the nature of such taxes as follows:

"Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes, or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."
The Court also said:

"Here we are asked to decide that a tax is a direct tax on property which has at all times been considered as the

antithesis of such a tax; that is, has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy."

This conclusion was reaffirmed in *New York Trust Co. v. Eisner*, 256 *U. S.* 345, 41 *S. Ct.* 506, 65 *L. Ed.* 963, 16 *A. L. R.* 660, involving the federal estate tax.

For a similar discussion of the nature of such taxes see *Re Inman*, 101 *Or.* 182, 199 *P.* 615, 619, 16 *A. L. R.* 675, in which the Court said:

"A death duty * * * is neither a direct tax upon property nor a capitation tax * * *. Death duties are, in reality, excises or imposts upon the right to transmit property at death or upon the right to succeed to it from the dead."

This classification of death duties as privilege taxes appears to be generally accepted. See 28 *Am. Jur.*, "Inheritance, Estate and Gift Taxes", § 14. It is there said:

"Numerous cases establish that an estate tax or a succession or inheritance tax, including the tax imposed on *inter vivos* transfers which are substitutes for testimentary dispositions, such as those in contemplation of death or intended to take effect at or after death, and transfers made under a power of appointment, is not a tax on the property of the decedent with respect to which it is levied, but is an excise imposed on the privilege of transmitting or receiving property upon the death of the owner, and consequently is not subject to any of the constitutional limitations upon taxes on property found in the state constitutions."

There are some contrary holdings. The decisions collected in the annotation in 108 *A. L. R.* 518, above referred to, appear to hold that probate fees, although taxes, are property taxes. For the reasons heretofore outlined, we cannot accept these holdings as persuasive.

We are of opinion that the tax imposed on the filing of accounts of decedents by the statute applicable to Sussex County is not a property tax and hence does not violate the constitutional requirement of uniformity because it is a graduated tax.

As to (b):

This question is the important one, and presents some difficulty. The constitutional requirement is that taxes shall be uniform upon the same class of subjects "within the territorial limits of the authority levying the tax, * * *". Admittedly the rates of taxation in all three counties at the time here important were different. See 12 *Del. C.* §§ 2521, 2522, and 2523.

At first reading, this phrase would seem to contemplate that if the law-making authority imposes a tax and fixes the rate, the tax must be uniform within the limits of its authority. The word "levy" often, and perhaps usually, means the determination to impose the tax, as distinguished from assessment and collection. *City of Richmond v. Eubank,* 179 ·*Va.* 70, 18 *S. E.* 2d 397, 403; *Atlantic Coast Line v. Amos,* 94 *Fla.* 588, 115 *So.* 315. But the word is also susceptible of other meanings, dependent upon the context in which it is used, and may refer to all the steps, collectively, by which public revenue is raised, or only to the assessment and collection of the tax. *Gray v. Board of School Inspectors,* 231 *Ill.* 63, 83 *N. E.* 95, 98; *Southern Railway v. Kay,* 62 *S. C.* 28, 39 *S. E.* 785, 786.

The question here is whether the constitutional provision should be read literally, or whether it should be construed in the light of the fundamental principle which it embodies, *viz.* the uniform and equal distribution of the tax burden among the taxpayers upon whom the tax is imposed. If given the latter construction, the taxing statute is constitutional be-

cause it is equal and uniform as respects the taxables of Sussex County.

Such precedents as we have been able to find support the latter view.

The General Assembly has apparently acted on this assumption. In 1935 it enacted the New Castle County Income Tax Law, applicable only to residents of that county. 40 *Del. L.* c. 12. That act directed the Levy Court to levy a county income tax for the benefit of the poor in that county, prescribed the method of determining the amount to be raised, and fixed the maximum rate of tax. In a very real sense the General Assembly "levied" the tax.

Another example of lack of uniformity is found in the varying maximum county tax rates. See 40 *Del. L.* c. 134; 47 *Del. L.* c. 223; 48 *Del. L.* c. 124; and 49 *Del. L.* c. 81.

There is scant Delaware authority touching the point. It has been twice raised with respect to school district taxation.

*In re School Code of* 1919 (*The Opinion of the Judges*), 7 *Boyce* 406, 108 *A.* 39, 42; concerned the *School Code of* 1919 (30 *Del. L.* c. 157). The objection was made that the taxes levied by the Levy Court for the benefit of the various school districts were not uniform "within the territorial limits of the authority levying the tax", which meant the County. The judges were of opinion that this phrase meant "the school district in which the taxes are to be used". True, in that case the Levy Court had no discretion in fixing the total amount of the tax; it was "the agent, or machinery, through which the taxes are actually levied and collected." But the holding lends some support to the view that so long as the tax imposed for the benefit of a county or other administrative subdivision is uniform within that county or subdivision the contitutional requirement is met.

In *Brennan v. Black*, 34 *Del. Ch.* 380, 392, 104 *A.* 2d 777, this holding was expressly reaffirmed.

In view that the territorial uniformity clause means equality and uniformity as respects the taxpayers upon whom and for whose benefit the tax is imposed is announced in *Moore v. School District of Pittsburgh*, 338 *Pa.* 466, 13 *A.* 2d 29, 32. The constitutional provision construed in that case is identical with ours, and in fact our provision was borrowed from the constitution of our sister State. See 2 *Constitutional Debates*, pp. 1392-1411.

A Pennsylvania statute directed the school authorities in school districts of the first class to levy and collect taxes sufficient to support the schools, and fixed the maximum rates of such taxes. The rates so fixed were different in the two school districts of the first class (Philadelphia and Pittsburgh).

The first objection concerned the constitutional provision forbidding the legislature to delegate to any special commission any power to levy taxes. The second contention was stated by the court and answered as follows:

"Philadelphia and Pittsburgh are in the same class of school districts. The act provides in effect for a levy of 10¼ mills in Philadelphia and 12¼ mills in Pittsburgh. It is argued that this is not uniformity under Article IX, section 1 of the Constitution, which provides: 'All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax.' Sticking in the bark of the words used in the Constitution this might be so. But when the broader view is taken and consideration is given to what the purpose of the basic law is, it becomes obvious that its provision is not violated. As applied to municipal territorial divisions of the State, it was intended to make uniform the taxes which persons living within any territorial dvision of the Commonwealth shall be required to pay to

support that territorial division. Territorially Philadelphia and Pittsburgh are separate units and the taxable persons in each unit will pay the same tax, a maximum millage of 10¼ * * * and 12¼ in Pittsburgh. Uniformity of taxation means 'equality of tax burden'. *Com.* [*ex rel. Dept. of Justice*] *v. A. Overholt & Co., Inc.*, 133 *Pa.* 182, 200 *A.* 849, 853; *Kelly v. Kalodner*, 320 *Pa.* 180, 181 *A.* 598; that is to say equality territorially. The State levies the tax within the territorial limits of the two cities, each of which comprise a separate school district. The Constitution does not say that taxes shall be uniform as to classes of municipal divisions of the State, but uniform territorially as the State is divided territorially into cities, counties, townships and school districts."

The uniformity requirement was thus construed broadly, so as to express the underlying intent "to make uniform the taxes which persons living within any territorial division * * * shall be required to pay to support that territorial division".

Two other decisions in other jurisdictions are of some interest.

In *Anderson v. Page*, 208 *S. C.* 146, 37 *S. E.* 2d 289, 290, an act fixing probate fees in Spartansburg County was assailed as unconstitutional on various grounds, including the ground that the tax was not uniform in its application. The rates differed in the different counties. The court rejected the contention, saying:

"* * * the statute now complained of is entirely uniform within the territory to which it applies * * *."

In *Daly v. Morgan*, 69 *Md.* 460, 16 *A.* 287, 290, 1 *L. R. A.* 757, the court had before it an act extending the limits of Baltimore City and providing for a different rate of taxation in the part to be annexed. The court applied a constitutional provision that had been construed to require uniformity.

The court said:

"\* \* \* a tax levied for public purposes, whether levied by the state, county, or city authorities, must be equal and uniform throughout the state, county, city, or taxing district to which it applies. \* \* \* Equality and uniformity, as between different taxing districts, \* \* \* is not required in local taxation."

These decisions may be said to stand for the general principle applicable to the requirement of territorial uniformity in taxation. So long as the burden of taxes levied and collected within a taxing district, to raise revenue for that district, is equally and fairly borne by all taxpayers within that district, the fundamental requirement of uniformity is satisfied. It is in the light of this fundamental principle that our constitutional provision should be construed.

The executors advance a subsidiary contention that the statute embodies an unreasonable classification of the subjects of taxation, because there is no reasonable ground for the difference in the rates between the counties. It is not at all certain that the legislature did not have reasonable grounds for making the distinction; but that is not the point here. Uniformity in classification, like uniformity in rate, applies to the taxing district. Since we have already determined the taxing district to be the county, the argument falls.

We are of opinion that the statute here involved does not violate the uniformity requirements of Article VIII, Section 1, of the Constitution.

The first part of Question 1 of the certified questions is:

"Is the fee of the Register of Wills in Sussex County for adjusting, settling and certifying accounts as provided by 12 *Del. C.* 2522 a tax \* \* \*?"

The answer to this question is: Yes.

The second part of Question 1 is:

"* * * if so, does it comply with the requirements of Article 8, Section 1 of the Constitution of the State of Delaware that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax?"

The answer to this question is: Yes.

Because of the answers to Question 1, Questions 2 and 3 require no answer.