# IN THE SUPREME COURT OF THE STATE OF DELAWARE

NEWARK PROPERTY
ASSOCIATION, DELAWARE
APARTMENT ASSOCIATION,
FIRST STATE MANUFACTURED
HOUSING ASSOCIATION, and
DELAWARE HOTEL & LODGING
ASSOCIATION,

§
§
§
§
§
§
§
§
§

No. 449, 2025

Court Below: Court of Chancery
of the State of Delaware

Plaintiffs Below,
Appellants,

§
§
§

C.A. No. 2025-1031

v.

§
§
§

STATE OF DELAWARE, MATT
MEYER, Governor of the State of
Delaware, MARCUS HENRY, New
Castle County Executive, DAVID
DEL GRANDE, Acting Chief
Financial Officer of New Castle
County, APPOQUINIMINK
SCHOOL DISTRICT BOARD OF
EDUCATION, BRANDYWINE
SCHOOL DISTRICT BOARD OF
EDUCATION, CHRISTINA
SCHOOL DISTRICT BOARD OF
EDUCATION, COLONIAL
SCHOOL DISTRICT BOARD OF
EDUCATION, NEW CASTLE
COUNTY VOCATIONAL-
TECHNICAL SCHOOL DISTRICT
BOARD OF EDUCATION, and RED
CLAY CONSOLIDATED SCHOOL
DISTRICT BOARD OF
EDUCATION,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Defendants Below,
Appellees.

Submitted: October 31, 2025
Decided: November 12, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

Upon appeal from the Court of Chancery. **AFFIRMED**.

Ashley R. Altschuler, Esquire, Kevin M. Regan, Esquire, Anna F. Martin, Esquire, MCDERMOTT WILL & SCHULTE LLP, Wilmington, Delaware; Paul W. Hughes, Esquire, Mary H. Schnoor, Esquire (*argued*), Alex C. Boota, Esquire, MCDERMOTT WILL & SCHULTE LLP, Washington, D.C. *for Plaintiffs Below, Appellants Newark Property Association, Delaware Apartment Association, First State Manufactured Housing Association, and Delaware Hotel and Lodging Association*.

Max B. Walton, Esquire, Matthew F. Boyer, Esquire, Michael J. Hoffman, Esquire, (*argued*), Grace E. Best, Esquire, CONNOLLY GALLAGHER LLP, Newark, Delaware *for Defendants Below, Appellees State of Delaware and Governor Matthew Meyer*.

Michael P. Stafford, Esquire, Mary F. Dugan, Esquire, Michael A. Laukaitis, II, Esquire, Alpa V. Bhatia, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware *for Defendants Below, Appellees Appoquinimink School District Board of Education, Christina School District Board of Education, Colonial School District Board of Education, New Castle County Vocational-Technical School District Board of Education, and Red Clay Consolidated School District Board of Education*.

Nicholas J. Brannick, Esquire, BALLARD SPAHR LLP, Wilmington, Delaware *for Defendants Below, Appellees Marcus Henry and David Del Grande*.

**SEITZ**, Chief Justice:

Before the Court is an expedited appeal from an expedited post-trial decision by the Court of Chancery. The court held that recently enacted House Bill 242 ("HB242"), which allows New Castle County school districts to create temporary split-rate property tax assessment systems between residential and non-residential properties, does not violate the Federal or State Constitutions or state law.[1] The plaintiffs have limited their appeal to two legal issues: first, whether the uniformity clause in Article VIII of the Delaware Constitution prohibits the General Assembly from allowing New Castle County school districts to charge different property tax rates for residential and non-residential properties; and second, whether New Castle County's recent steps to correct misclassifications violate what the plaintiffs describe as a "revenue neutrality" requirement in HB242. For the reasons set forth below, we agree with the Court of Chancery's reasoning dismissing both challenges to the legislation and affirm its judgment.

I.

A.

We rely on the facts from the Court of Chancery decision, which were mostly undisputed and contained in a joint statement of undisputed facts submitted by the

---

[1] *Newark Prop. Ass'n v. State*, 2025 WL 3041907 (Del. Ch. Oct. 30, 2025).

3

parties. The events that led to HB242 relate to earlier litigation that began in 2020. The NAACP Delaware State Conference of Branches and Delawareans for Educational Opportunity filed suit in the Court of Chancery against the State and its three counties challenging the assessment system used to fund Delaware public schools.[2] The City of Wilmington also filed suit against New Castle County asserting related claims.[3] As the Vice Chancellor summarized the problem:

> One third of the funding for Delaware's public schools comes from local taxes. When school districts levy local taxes, they are required to use the assessment rolls prepared by Delaware's three counties. If there are problems with the counties' assessment rolls, then those problems affect the school districts' ability to levy local taxes.[4]

After trial, the Court of Chancery found that the counties' tax assessment rolls failed to comply with a statutory requirement that "[a]ll property subject to assessment shall be assessed at its fair market value" (the "True Value Statute");[5] and a Delaware Constitutional requirement that "[a]ll taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the

---

[2] *In re Delaware Pub. Schs. Litig.*, 239 A.3d 451 (Del. Ch. 2020).

[3] The City of Wilmington sued New Castle County under the state assessment roll statutes. 22 *Del. C.* §§ 1101–1104. A violation of those requirements depended on the court finding that New Castle County's property tax assessments violated the True Value Statute and Uniformity Clause.

[4] *Pub. Schs.*, 239 A.3d at 463.

[5] 9 *Del. C.* § 8306.

tax" (the "Uniformity Clause").[6] The court held that the counties violated the True Value Statute and the Uniformity Clause because their tax roll valuations did not "fall within a reasonable range of present fair market value, taking into account related considerations such as legitimate governmental interests in efficiency and administrative convenience and the constitutional mandate of uniform treatment."[7]

The *Public Schools* decision addressed assessment practices in all three counties. In this appeal, we focus on New Castle County (the "County"), which is the subject of HB242. After the *Public Schools* decision, the County agreed to assess all property within the County for the first time since 1983.[8] Once appeals were completed from tentative assessments, the reassessed property values became effective on July 1, 2025.[9]

County residents pay both county and school district taxes. The County and the school districts separately set their property tax rates. In June 2025, the County adopted a "split-rate" tax system through an ordinance that created separate tax rates for residential and non-residential property.[10] For property tax purposes,

---

[6] Del. Const. art. VIII, § 1.

[7] *Pub. Schs.*, 239 A.3d at 477–78.

[8] App. to Appellant's Opening Br. at A0201 [hereinafter A_] (Joint Statement of Undisputed Facts ¶ 16 [hereinafter Stipulated Facts]).

[9] *Id.* (Stipulated Facts ¶ 25).

[10] A0750–53 (Annual Revenue Ordinance).

"residential" properties are primarily single-family homes and structures with four apartment units or fewer, while "non-residential" properties are commercial sites, larger apartment buildings, and manufactured home sites.[11]

That same month, before HB242's introduction and passage, the Appoquinimink, Brandywine, Christina, Colonial, New Castle County Vocational-Technical, and Red Clay School District boards (the "School District Defendants") used the County's 2025 assessed values to set school property taxes.[12]  Unlike the County, they set school district taxes using a single real estate tax rate that did not differentiate between residential and non-residential properties.

Since the last reassessment decades ago, the value of the County's property tax base has shifted significantly from non-residential to residential properties.[13] The assessed value of residential properties increased dramatically over non-residential properties when compared to values from the last reassessment in 1983. Controversy began after the County mailed County and school tax bills to taxpayers.

---

[11] *See* App. to Answering Br. at B402 [hereinafter B_] (Ex.  3 to Decl. of Kenneth Dunn, Sr.) (emails from county official explaining properties with five-plus rental or mobile-home units are classified as "non-residential").

[12] School district tax revenues after reassessment are subject to certain limitations not relevant to our decision.  *See* 14 *Del*. *C*. §§ 1916(b), 2601(c).

[13] A0744 (Decl. of David Del Grande ¶ 5, tbl.1) (highlighting residential portion of tax base increased from 65.87% to 75.52%).

Once County residents learned of the magnitude of residential property tax increases, the fallout was swift. County residential property owners demanded their legislators address the dramatic increases. On August 12, 2025, following a special session, the Delaware General Assembly passed HB242.[14] HB242 allowed the School District Defendants to reset their tax rates for the 2025-2026 school tax year using different rates for residential and non-residential property.[15] The School District Defendants implemented a split-rate structure by reducing the tax rate for residential properties and increasing the tax rate for non-residential properties.[16]

HB242 required that the non-residential tax rate set by a school district be at least equal to the residential tax rate and not more than two times the residential tax rate. Also, the total revenue projected to be collected through the new residential and non-residential tax warrants could not exceed the revenue the district projected it would collect under its original 2025 tax warrant. Stated simply, HB242 allowed school districts to slice the projected 2025 revenue pie as they saw fit, but not to increase the size of the pie. Using County data for residential and non-residential

---

[14] A0203 (Stipulated Facts ¶ 33).

[15] Del. H.B. 242, 153d Gen. Assem. (2025) ("An Act Relating to Local School Taxes in the 2025-2026 Tax Year") [hereinafter HB242].

[16] A0204–05 (Stipulated Facts ¶¶ 38–49).

properties, the School District Defendants reset the tax rates for the two classes of property.

After the School District Defendants reset their tax rates, the County discovered classification errors affecting less than one percent of County residential and non-residential properties.[17]  The County anticipates that correcting these errors will convert 994 properties from residential to non-residential, increasing their taxes; and 415 properties from non-residential to residential, decreasing their taxes.  The School District Defendants estimate that the net effect of classification-error corrections will result in about a $4 million increase in tax revenues above the total amount of revenue the districts were projected to collect under their original 2025-2026 tax warrants.[18]

B.

Four organizations—Newark Property Association, Delaware Apartment Association, First State Manufactured Housing Association, and Delaware Hotel & Lodging Association—collectively, the "Plaintiffs," filed suit in the Court of Chancery against the State, the Governor, the New Castle County Executive, the

---

[17] *See generally* B380–408 (Decl. of Kenneth Dunn, Sr.) (explaining misclassification discoveries).

[18] A0995–96 (Second Decl. of Paul W. Hughes ¶ 5) (explaining the reclassifications will "result in more than $4 million in projected tax revenue"); A0839 (Decl. of Denzil J. Hardman ¶ 18) (noting "the total assessed value of all properties to be reclassified from residential to non-residential is $1,001,862,300, and the total assessed values of all properties to be reclassified from non-residential to residential is $116,383,300").

8

County's chief financial officer, and six New Castle County school boards—collectively, the "Defendants." The Plaintiffs challenged HB242 on constitutional and statutory grounds.[19]

In a thorough Post-Trial Opinion, the Court of Chancery denied the Plaintiffs' claims and upheld the statute.[20] Relevant to this appeal, the Vice Chancellor ruled that HB242 did not violate the Uniformity Clause. According to the court, under the Delaware Constitution, the General Assembly may create reasonable property classifications for tax purposes.[21] Because the County and the School District Defendants did not create non-uniform tax rates within each class, the statute was constitutional. The court also found that the County's property classifications, as implemented and with corrections, did not run afoul of HB242's prohibition against an increase in projected tax revenue from the original 2025 tax warrants. The court reasoned that because tax warrant revenues were "projected" instead of "actual" revenues, correcting property classification errors did not violate the statute.[22]

---

[19] *See* A0045–87 (Verified Compl. for Decl. and Inj. Relief).

[20] *See Newark Prop. Ass'n*, 2025 WL 3041907.

[21] *Id.* at *7–11.

[22] *Id.* at *23.

On appeal, the Plaintiffs repeat their argument that HB242 violates the Uniformity Clause in Article VIII, Section 1 of the Delaware Constitution.[23] According to the Plaintiffs, a plain reading of the constitutional language "does not permit facial subclassifications of real property because real property is a single 'class of subjects' requiring 'uniform' taxes."[24] They rely on both Delaware and Pennsylvania caselaw to support their reading.[25] The Plaintiffs also argue that "[e]ven if the Uniformity Clause leaves room for reasonable subclassifications of real property," "HB242 does not make one" because it "bears no relationship to the tax's objective—funding public schools."[26]

Further, the Plaintiffs renew their argument that the School District Defendants' implementation of HB242 violates the bill's provision that "precludes Defendants from issuing new tax bills where the 'revenue projected to be collected' 'exceed[s] the total amount of revenue' each 'district was [initially] projected to collect . . . .'"[27] By reclassifying residential properties as non-residential to correct misclassifications, the argument goes, the revised tax bills will

---

[23] Opening Br. at 2–3.

[24] *Id.* at 2 (quoting Del. Const. art. VIII, § 1).

[25] *Id.* at 3–4.

[26] *Id.*

[27] *Id.* at 2 (quoting HB242).

"undoubtedly . . . collect more than the original tax warrants. . . . flatly violat[ing] this core limitation."[28] On appeal, we review the constitutionality of state laws and statutory interpretation issues *de novo*.[29]

## II.

## A.

We begin our analysis with the constitutionality of HB242. A law can be challenged as "facially" unconstitutional, meaning that it "cannot be valid under any set of circumstances."[30] A law can also be challenged "as applied," meaning that the law as applied to a specific circumstance results in a constitutional violation.[31] Here, the Plaintiffs have raised only a facial challenge to HB242.[32] To overcome the presumption of constitutionality, a plaintiff asserting a facial challenge bears a heavy burden. If there are any circumstances in which a statute can be applied constitutionally, then a facial constitutional challenge will fail.[33]

---

[28] *Id.*

[29] *CML V, LLC v. Bax*, 28 A.3d 1037, 1040 (Del. 2011), *as corrected* (Sept. 6, 2011).

[30] *Republican State Comm. of Del. v. Dep't of Elections*, 250 A.3d 911, 916 (Del. Ch. 2020) (quoting *Sierra v. Dep't of Servs. for Child., Youth & Their Fams.*, 238 A.3d 142, 156 (Del. 2020)).

[31] *Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 956 (Del. 2020).

[32] Opening Br. at 25 ("HB242 is facially unconstitutional.").

[33] *Grossinger*, 224 A.3d at 956 ("A facial challenge alleges that a statute or regulation is not valid under *any* set of circumstances . . . .") (emphasis added).

In *Capriglione v. State ex rel. Jennings*, we recently set forth the inquiry for determining the framers' intent behind constitutional provisions:

> "Any analysis of a Delaware Constitutional provision begins with that provision's language itself." Our task is to ascertain both the intent of the delegates to the Constitutional Convention of 1897 and the original public meaning of the language at issue. When the historical understanding of the provision is not dispositive, "we next turn to precedent[.]" In doing so, we consider the decisions of this Court and any well-developed decisional law of our State's lower courts.[34]

The Uniformity Clause states that "[a]ll taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, except as otherwise permitted herein . . . ."[35] The plain language of this provision does not restrict the taxing authority's ability to establish classes, but when classes are created, the taxes must be uniform within each class.

The 1897 Constitutional Convention debates support the plain meaning of the Uniformity Clause. The delegates used Pennsylvania's uniformity clause as a starting point.[36] Pennsylvania's constitutional provision required that "[a]ll taxes be uniform upon the same class of subjects," but allowed the Pennsylvania General

---

[34] 279 A.3d 803, 806 (Del. 2021) (quoting *In re Request of Gov. for Advisory Op.*, 950 A.2d 651, 653 (Del. 2008)) (footnotes omitted) (alteration in original).

[35] Del. Const. art. VIII, § 1.

[36] B221 (2 DEBATES AND PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF THE STATE OF DELAWARE 1387 (ed. Charles G. Guyer & Edmon C. Hardesty, 1957)) [hereinafter 1897 Convention] (introducing Pennsylvania's Uniformity Clause into record to begin debates).

12

Assembly through general laws to exempt certain properties from uniform taxation, like public property used for public purposes, places of religious worship and burial, and public charity institutions.[37]

In the Delaware debates, the delegates were not concerned with how the General Assembly would define a class of subjects.[38] Indeed, the delegates were sensitive to an overly prescriptive provision that would take away the General Assembly's flexibility to adapt to changing circumstances.[39] Instead, the focus was on the unfairness of granting specific tax exemptions to some businesses and institutions within a class while refusing them for others similarly situated within the same class.[40] In other words, as one delegate stated: "[i]f you are going to exempt one [business] you are bound to exempt all of that class."[41] The debates do not reveal any intent to restrict the General Assembly's classification powers.

---

[37] Pa. Const. art. IX, § 1 (1874).

[38] *See generally* B221–40 (1897 Convention at 1387–1411) (debates centering on tax exemptions and proper extent of legislature's flexibility in taxing, but no discussion on how classes could be defined).

[39] B222 (1897 Convention at 1393) (delegate William Saulsbury proclaiming, "I should like to see this provision made broad enough to allow the General Assembly still to use that wise discretion"); B235 (1897 Convention at 1406) (delegate Ezekiel W. Cooper, stating "we ought not to restrict this matter so absolutely as that the Legislature cannot do those things that are oft times necessary for the public good").

[40] B222–23 (1897 Convention at 1393–94) (delegates arguing over whether to create mandatory or permissive tax exemptions for religious institutions, schools, and other classes).

[41] B238 (1897 Convention at 1409) (quoting delegate Woodbury Martin).

The Plaintiffs lean heavily on the Pennsylvania Constitution's uniformity clause and how Pennsylvania courts eventually held that real property is one class not subject to subclassification.[42] What the Plaintiffs miss, however, is that Pennsylvania followed an uneven interpretive path after Delaware adopted its Uniformity Clause, meaning Pennsylvania's current interpretation is of little relevance here.[43] At the time Delaware adopted its Uniformity Clause, Pennsylvania allowed legislative classification of different types of real property.[44] It was only much later that the Pennsylvania courts chose a different approach.[45] Delaware, by contrast, has stayed true to its original interpretation. For instance, in 1948, and not for the first time,[46] a Delaware court held that:

> Under the language of Section 1, Article VIII, it is, necessarily, conceded that the legislature has the right to classify property for the

---

[42] *Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 975 (Pa. 2017) (school district selectively appealing only non-residential property assessments, considering area's widespread underassessment, violates state uniformity clause).

[43] *Madway v. Bd. for the Assessment and Revision of Taxes*, 233 A.2d 273, 276 (Pa. 1967) (noting its own uniformity clause jurisprudence had "followed a path through [its] courts that is easily as unpredictable and winding as Alice's road through Wonderland" before finally settling on subclassification prohibition in 1967).

[44] *See, e.g.*, *Jermyn v. Scranton*, 62 A. 29, 29 (Pa. 1905) ("The power to classify being given [to the legislature], all that is then required by the Constitution is that taxes shall be uniform upon the members of a class . . . .").

[45] *See, e.g.*, *Valley Forge Towers Apartments*, 163 A.3d at 975.

[46] *Conard v. State*, 16 A.2d 121, 125 (Del. Super. 1940) ("It is generally agreed that a classification for the purpose of taxation, not purely arbitrary but based on reason, is entirely proper; and that uniformity as applied to occupation taxation simply means taxation that acts alike on all persons similarly situated.").

14

purpose of taxation, provided the classification adopted is reasonable and not purely arbitrary.

. . . Moreover, when a classification is questioned, if any facts can reasonably be conceived which will sustain it, their existence must be assumed. . . . where real property within the same territorial limits is classified for tax purposes, inherent differences in its nature or character, and even in its use, may be sufficient.[47]

In 1957, this Court confirmed that "legislatures have the right to classify objects of taxation provided the classification adopted is reasonable and not arbitrary."[48]  In 1995, another Delaware court described this law as "clearly established."[49]  Simply put, the General Assembly's power to create different classes of property, "provided the classification adopted is reasonable and not purely arbitrary," has been settled for some time.[50]

---

[47] *Phila., B. & W. R. Co. v. Mayor & Council of Wilm.*, 57 A.2d 759, 765 (Del. Ch. 1948) (citations omitted).  This block of text cites no less than twelve different authorities for the propositions contained within.  *E.g.*, *Conard*, 16 A.2d 121.

[48] *Aetna Cas. & Sur. Co. v. Smith*, 131 A.2d 168, 177 (Del. 1957) (upholding legislation taxing different types of insurance premiums at non-uniform rates).

[49] *Green v. Sussex Cnty.*, 668 A.2d 770 (Del. Super.) (upholding county's sewer district assessment policy), *aff'd,* 667 A.2d 1319 (Del. 1995).  Specifically, *Green* observed that:
> The law in Delaware has been clearly established and it is that governments may classify . . . property differently for taxation so long as the classification is reasonable. The classification must not be arbitrary and capricious; it must rest on a reasonable basis; it cannot bear unequally on . . . property of the same class; and the burden is on the objector to establish the unreasonableness of the classification since its reasonableness is presumed.

*Id.*

[50] RANDY J. HOLLAND, THE DELAWARE STATE CONSTITUTION 232 (2d ed. 2017).  The Plaintiffs point to language in Article VIII, § 1 that permits counties and municipalities to exempt property from taxes when doing so will serve the public welfare.  They also rely on a 1976 amendment that defines how property used for agriculture must be valued.  These express provisions, the Plaintiffs

15

The Plaintiffs challenge this established law with two decisions that, according to them, require a "distinct application" of the Uniformity Clause "in the context of real property."[51]  They claim that in *In re Zoller's Estate*, the Court distinguished between estate taxes subject to a more lenient uniformity analysis, and property taxes subject to a stricter test.[52]  They base their argument on the Court's statement "that the tax [at issue] is not a property tax and hence does not violate the constitutional requirement of uniformity because it is a graduated tax."[53]

That ruling, however, meant only that the tax did not violate the Uniformity Clause by "graduat[ing] arbitrarily according to the size of the estate."[54]  In other words, *Zoller's Estate* held that graduating rates, which function by varying the percentage of the tax depending on the value of the taxed item, was permissible for

_____

maintain, are the only exceptions to the general requirement that real property must be treated as a single class.  But neither provision speaks to whether real property may be classified.  The exemption procedure expressly allows the counties to do what is otherwise barred by the Uniformity Clause: treat subjects within the same class differently when non-uniform treatment serves the public welfare.  The debates that preceded the 1976 amendment reveal a concern about protecting farmland by not assessing it at fair market value, not an intent to override existing precedent interpreting the Uniformity Clause to permit classification of real property.  *See* B291–332 (transcript of legislative debates); *Phila., B. & W. R. Co.*, 57 A.2d at 765.

[51] Opening Br. at 31.

[52] *Id.* at 27, 31 (citing *In re Zoller's Est.*, 171 A.2d 375 (Del. 1961) (holding that the estate tax complied with Uniformity Clause)).

[53] *In re Zoller's Est.*, 171 A.2d at 378–79.

[54] *Id.* at 377.

estate taxes, but not property taxes.[55] The Court did not hold that real property was subject to closer scrutiny under the Uniformity Clause.

The Plaintiffs next claim that "[t]he most probative authority" on this issue "is the Court of Chancery's decision in *Public Schools*."[56] *Public Schools*, they say, requires uniform effective tax rates between different types of real property.[57] But, as the Court of Chancery here pointed out, the Plaintiffs misread the decision. *Public Schools* addressed a fundamentally flawed valuation methodology creating sizable intra-class effective tax rate disparities.[58] By contrast, HB242 consistently reallocates actual and effective inter-class tax rates to correct a perceived hardship.[59]

---

[55] *Id.* at 378–79.

[56] Opening Br. at 31.

[57] *Id.* at 31–33 (arguing "*Public Schools* held that, for purposes of the Uniformity Clause, '[t]he true test of uniformity is whether effective property tax rates (taxes as a percentage of market value) are reasonably uniform'"; even across residential vs. non-residential properties (quoting *Pub. Schs.*, 239 A.3d at 496–97)).

[58] *Pub. Schs.*, 239 A.3d at 496–97 (observing effective tax rates had become non-uniform within single classes).

[59] *See id.* at 486. The Court of Chancery explained:
> [C]ounties are using indefinite-base-year methods that do not generate anything approaching acceptable levels of uniformity. The counties have used the same assessed values for so long that taxpayers of the same general class and within the territorial limits of the authority are not treated the same. Instead, taxpayers experience quite different effective rates of taxation. . . . The underlying assessed values diverge from present fair market value to such a degree that the reality is a profound lack of uniformity.

*Id.*

*Public Schools* does not bear on whether a residential/non-residential classification violates the Uniformity Clause.

Next, the Plaintiffs contend that HB242's property classifications—and the resulting disparity in the School Districts' tax rates—are unconstitutional because imposing a higher tax rate on non-residential property bears no relationship to those who use or benefit from public schools. According to the Plaintiffs, "[h]igher tax rates for non-residential properties cannot be justified because of greater usage or benefit from public schools[,]" because "it is primarily residential properties that derive property value from being located within a certain public school district . . . ."[60]

A lawful tax classification "must not be arbitrary and capricious; it must rest on a reasonable basis; [and] it cannot bear unequally on . . . property of the same class . . . ."[61] We presume that a legislative classification is reasonable, mindful that "taxation is not an 'exact science' and thus, do not require 'computer precision' in the application."[62] In evaluating a classification's reasonableness, we do not second-guess the General Assembly's judgment. "It is beyond the province of courts to

---

[60] Opening Br. at 40.

[61] *Green*, 668 A.2d at 776.

[62] HOLLAND, note 50, at 233 (quoting *Bailey v. Bd. of Assessment Rev. Dept' of Land Use*, 2004 WL 1965867, at *3 (Del. Super. Aug. 19, 2004) (discussing *Bd. of Assessment Rev. for New Castle Cnty. v. Stewart*, 378 A.2d 113 (1977))).

question the policy or wisdom of an otherwise valid law."[63]  The only question is whether the classification is "based on reason."[64]

The Plaintiffs' argument misses the mark.  The General Assembly "pass[ed] [HB242] to provide short-term relief to impacted residents[,]" having determined that "[b]usiness entities [were] in a better position to bear the costs associated with the tax increase."[65]  In doing so, the General Assembly permitted the School District Defendants to rebalance the tax burden of residential and non-residential properties to match more closely the burdens pre-dating the reassessment.  The wisdom of that policy judgment is not ours to assess.[66]  What matters is that the General Assembly acted with an articulable and rational goal in mind.

Finally, the Plaintiffs argue that the Defendants' "implementation of HB242 . . . does not reasonably define 'non-residential' properties," because it includes certain residential buildings.[67]  As an initial matter, a challenge to implementation is an as-applied challenge—one the Plaintiffs abandoned on appeal.

---

[63] *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1259 (Del. 2011).

[64] *Conard*, 16 A.2d at 125.

[65] *See* B087 (Aff. of Kimberly Williams) (state representative citing "equitable concerns due to the seeming windfall non-residential property owners were set to receive" as reason for HB242's passage).

[66] *Sheehan*, 15 A.3d at 1259.

[67] Opening Br. at 41.

Even so, they misread what the Uniformity Clause requires to be "reasonable." The Constitution does not demand perfect precision when making classifications. It requires only that the classifications have a rational basis. HB242 authorized a split-rate system that defined smaller dwellings as residential and all other types of property as non-residential. The treatment of larger apartment buildings as non-residential was consistent with how those properties are treated in the federal system.[68] Even if these classifications have unusual contours, a lack of "computer precision" will not render them "purely arbitrary."[69] Because the Defendants' classifications are based on a reasonably perceived difference, their implementation of the bill does not violate the Uniformity Clause.

B.

Next, we turn to HB242 and its limiting language. Under the Bill, the School District Defendants may set different tax rates for different classes of property, but the "revenue projected to be collected" from the new rate cannot "exceed the total amount of revenue the district was projected to collect under its original 2025-2026 tax warrant."[70] The Court of Chancery found that HB242 does not require exact

---

[68] *See, e.g.*, A0493–96 (Decl. of Paul Hughes) (describing the treatment of multi-unit rental properties for federal underwriting standards and mortgage credit programs).

[69] HOLLAND, note 50, at 233.

[70] HB242 § 1(1).

"revenue neutrality" because the statute speaks to "projected"—not "actual"—revenue from the new tax warrants. In other words, by using projected revenues, HB242 contemplates some give in the revenue figure. The only sensible reading, the court found, allows revenue adjustments to account for the situation presented here—correcting classification errors.

The Plaintiffs reiterate their straightforward argument on appeal—"[b]y increasing the tax base of 'nonresidential' properties (taxed at the higher rate), the net effect of Defendants' new plan is to increase the taxes that will be collected" under the original tax warrant.[71] We are unpersuaded that the County's classification-error correction and its effect on revenue projections violates the statute.

First, under settled rules of statutory construction, we must give meaning to each word in the statute.[72] When referring to the revenue limitations, the General Assembly twice chose the word "projected," not "actual," to refer to revenues. HB242 required a projection, not a "perpetual alignment between the initial projection and the final, actual revenue collected after later data refinements or

---

[71] A0288 (Pls.' Pre-Trial Opening Br); Opening Br. at 2.

[72] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 118–19 (Del. 2020) (invoking this canon to interpret statutes).

corrections."[73] The General Assembly understood the distinction between projected and actual revenue, as reflected in its use of "actual" and not "projected" revenues to limit school districts to "no more than a 10% increase in actual revenue" when setting a post-reassessment tax rate.[74] By defining the figure as an estimate and not an actual value, the General Assembly anticipated some play in the joints to accommodate changes in projections based on events like error corrections.

The Plaintiffs argue that even if *some* changes are permissible under HB242, the County's new "projected" figures must still be revenue-neutral when compared to the projections in the original tax warrants. This argument, however, overreads the operative language. The revenue-neutrality requirement is in Section 1(1) of the bill. That subsection speaks exclusively to the school districts' responsibilities under the statute. In contrast, the County's responsibilities are defined in other subsections, none of which address revenue neutrality. Accordingly, later changes to the tax base made by the County—including by reclassifying properties to correct errors—do not violate the statute. The Defendants concede that when the School District Defendants reset their tax rates under HB242, the total revenue that each district

---

[73] *Newark Prop. Ass'n*, 2025 WL 304190, at *23; *see also* A0206 (Stipulated Facts ¶ 50) (noting "projected revenue" was used).

[74] 14 *Del. C.* § 1916(b).

22

projected did not exceed the revenue that the district was projected to collect under its original warrant. This is all the revenue neutrality language in HB242 required.

We also agree with the Court of Chancery that the Plaintiffs' rigid interpretation makes little practical sense. After HB242 became law, the School District Defendants had ten business days to calculate revenue based on the data as it stood at that time.[75] Tax rolls are dynamic through appeals, reclassifications, and supplemental assessments that occur after rate setting. As the Plaintiffs agree, the General Assembly used "'projected' instead of 'actual'" revenue to allow the County to consider changes from assessment appeals, delinquencies, property sales and redevelopments.[76] Correcting classification errors falls into the same category as the examples described by the Plaintiffs. The alternative would require the County and the School District Defendants to ignore errors in its tax rolls and undermine confidence in their reassessment efforts.[77]

---

[75] A0204 (Stipulated Facts ¶ 36).

[76] Opening Br. at 20.

[77] The Plaintiffs also argue that correcting classification errors came from a policy change rather than an administrative effort to correct errors. Opening Br. at 22. As the County has explained, however, it will rely on the same data that the County used to split tax rates for County taxes. A0500–01. Thus, the County has not, as a policy matter, launched a new system to divide residential and non-residential properties.

## III.

The judgment of the Court of Chancery is affirmed.  Under Supreme Court Rule 18, the mandate shall issue forthwith.